No. 20,735.

C. W. PARKS and R. D. PARKS, Partners, etc., *Appellants*, v.
THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY,
*Appellee.*

No. 20,736.

A. W. PARKS, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

1. TRIAL — *Cross-examination of Witness.* For reasons stated in the
opinion an objection to a question on cross-examination is held to have
been properly sustained.

2. NEGLIGENCE — *Loss of Cattle in Transit — Negligence Found — Not
Charged in Petition.* In an action founded upon negligence where
the jury find generally for the plaintiff, but in a special finding de-
clare that the negligence of the defendant consisted of something not
charged in the petition, it is the duty of the court to render judg-
ment in defendant's favor. (*McBeth v. Railway Co.*, 95 Kan. 364, 148
Pac. 621; *Spinden v. Railway Co.*, 95 Kan. 474, 148 Pac. 747.)

Appeals from Greenwood district court; ALLISON T. AYRES,
judge. Opinion filed March 10, 1917. Both affirmed.

*Howard J. Hodgson*, of Eureka, for the appellants.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Harlow
Hurley*, all of Topeka, and *W. L. Huggins*, of Emporia, for the
appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiffs brought these actions to recover
for the loss of a number of cattle, some of which were drowned
and others injured when the cars in which they were being
transported were washed into the Kansas river. The petition
in substance alleged the following acts of negligence: that
defendant selected for its right of way a tract of land "un-
necessarily close to and along the bank of a deep, swift-flowing,
large and dangerous river, to wit: the Kansas river," and had
carelessly and negligently constructed on its right of way "an
insufficient road bed and track and failed to protect said rail-
road bed and track with sufficient retaining walls, timbers,

steel rails, concrete and stone work or other rip-rap work to keep said road bed in its proper position when trains loaded with live stock were passing over" the same. The petition then set forth the shipment of plaintiffs' cattle under the usual contract, and alleged that while the cattle were in the possession and under the control of defendant and in its cars on solid ground in a place of safety, defendant and its employees wantonly, carelessly and negligently moved the cars from a place of safety out upon aforesaid track at a time when the waters of a small stream known as Turkey creek were passing over the bridge and track to a depth of at least one foot, and when a part of said bridge had already been washed away, well knowing that said bridge and track were in a dangerous condition, and moved the cars to a point on said track where the roadbed and track settled and gave way, allowing the cars with plaintiffs' cattle to fall into the Kansas river.

The cattle were to be delivered at the Kansas City stockyards. At an early hour on the morning of September 7, 1914, the train with plaintiffs' cattle was on a switch track leading to the stockyards and had arrived at the bridge over Turkey creek. There was a great rise of water in the creek which at this time had not overflowed its banks, but the piling of the bridge was shaking so that the engine foreman in charge of the train considered it unsafe to take the train across. The trainmaster directed him to pull back and said he would arrange to get the train over the Burlington track, which would require some telephoning to obtain permission from the other road. While the train men were executing the order to pull the train back from the bridge the water began to run across the banks of the stream, and it was found impossible to get the train back. An attempt was then made to get the train upon a higher track located on the embankment or dike of the drainage district. Before this could be done the flood of waters washed a tie under one of the cars, derailing it and stalling the engine. While efforts were being made to get the car on the rails, the embankment broke from the force of the flood waters, and the train men opened the car doors to let the cattle out. The force of the water from the creek was so great that it washed great holes in the dike and several of the cars were carried half way across the Kansas river. Twelve of the

cattle were drowned and others received injuries which caused a shrinkage in market value.

The jury returned a verdict in plaintiffs' favor, and special findings to the effect that the flood in Turkey creek was higher than any previous flood in thirty-five years; that it washed three holes in the river embankment from 50 to 150 feet in depth; that defendant's employees were not guilty of any negligence after discovering the danger to which plaintiffs' cattle were exposed; that the cause of the loss of the cattle was "an insufficient bridge across Turkey creek"; and that defendant's negligence consisted in having this unsafe bridge before the flood came. On defendant's motion the court gave judgment against plaintiffs on the special findings. It is from this ruling that plaintiffs appeal.

1. Nelson, trainmaster of defendant, was a witness, and testified that in company with the foreman of the stockyards he examined the bridge and found the current of Turkey creek coming down with such force that it "waved the bridge," and after advising with the stockyards foreman, he gave the order to pull the train back and to arrange to send it over the Burlington tracks. He also testified that he did not know of anything the defendant could have done to prevent the injury. He was then asked on cross-examination this question: "If they had a bridge down there that was in good condition there would not have been any damage?" to which the court sustained an objection that it was incompetent, irrelevant and immaterial. There are a number of reasons why the contention that this was error can not be sustained. There was no evidence to show that the bridge was insufficient or defective except as it became insufficient by reason of what the jury find was an unprecedented flood. Nor was it alleged in the petition that the bridge was defective. Again, the plaintiffs can not complain of the ruling for the reason that the jury returned a general verdict in their favor, as well as a special finding that the bridge was insufficient. For still another reason the ruling could in no event have been prejudicial. The same witness (apparently while being cross-examined, though the abstract is not entirely clear in this respect) had already testified that if the bridge had been in proper condition when he went there,

he would not have told the men not to go across with the train; and that the only reason he did not get the cattle across was the condition of the bridge which did not permit the train to cross in safety.

2. Plainly it was the duty of the court to render judgment in defendant's favor on the special findings. The negligence which the jury find was the cause of the injury was not pleaded. The negligence relied upon in the petition was not proved. The negligence alleged was the selection by the defendant of land for its right of way unnecessarily close to the bank of a swift-flowing and dangerous river, the failure to protect its roadbed by rip-rap work, and wantonly and carelessly moving the cars with plaintiffs' cattle from a place of safety to a point on defendant's track where the road settled and gave way. The only reference in the petition to the bridge over Turkey creek is an averment that a part of the bridge had already washed out when the defendant attempted to move the train back. Obviously, the jury concluded (without any evidence on the matter) that the bridge was unsafe before the high water came. The evidence was that the bridge had been there for eighteen years, and there was no evidence to show that it was in any respect unsafe or defective.

Even if the petition had alleged that the bridge was defective, the evidence shows beyond question that the insufficiency of the bridge was not the proximate cause of the loss of the cattle. The unprecedented rise of the water in Turkey creek had undermined the bridge before the train came along, and the jury could do no less than approve all that the defendant's employees did in attempting to take the train around by another way, and, failing in that, to get the train upon a higher track. However, under repeated decisions, the jury having found that the negligence consisted of something not charged in the petition, the defendant was entitled to judgment for costs. (See authorities cited in the opinions in the recent cases of *McBeth v. Railway Co.*, 95 Kan. 364, 148 Pac. 621, and *Spinden v. Railway Co.*, 95 Kan. 474, 148 Pac. 747.)

The judgment is affirmed.