No. 31,092.

MARY LAHMEYER, *Appellee*, v. F. I. MASSEY, *Appellant*.

(21 P. 2d 380.)

Opinion filed May 6, 1933.

*Chester Stevens* and *Frank Clampitt*, both of Independence, for the appellant.

*J. M. Humphrey*, of Erie, *Horace H. Hagan* and *T. Austin Gavin*, both of Tulsa, Okla., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for personal injuries sustained in an automobile casualty alleged to have resulted from the negligence of defendant. The jury answered special questions and returned a verdict for plaintiff. Defendant has appealed.

Those parts of the record necessary for a decision here may be stated briefly as follows: Plaintiff alleged that she resides at Tulsa, Okla.; that about four o'clock in the afternoon of March 30, 1931, she was riding in the rear seat, on the left side, of a motor car which

was proceeding west on Second street in Tulsa; that the car was being driven in a careful and prudent manner at a speed not exceeding ten miles per hour, on the right side of the street, in accordance with the laws of the state and the ordinances of the city; that defendant was proceeding in a northerly direction on Utica avenue in a car loaded with equipment, and in his possession and control; that a certain ordinance of the city of Tulsa then in force provides:

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. . . ."

That under the circumstances and this ordinance the car in which plaintiff was riding had the right of way at the intersection of Second street and Utica avenue; that the car in which plaintiff was riding had proceeded well across the intersection when defendant's car crashed into and collided with the rear left side of the car in which plaintiff was riding, throwing plaintiff forward and to the right through the window on the right side of the car, causing plaintiff personal injuries, which were later detailed in the petition; that defendant's car was defective in that the foot brakes therein were old and worn and the emergency was disconnected or broken, on account of which defendant was unable properly to control his car while driving; that in addition defendant was negligent in his failure to have the windows and windshield of his car in such condition as to make it possible to see through them and observe the movement of other cars. Defendant's answer admitted the residence of the parties, contained a general denial, alleged contributory negligence on the part of plaintiff, and further alleged that the collision was the result of an unavoidable accident. The reply was a general denial.

Appellant argues several points on this appeal, which, if sustained, would require a reversal for a new trial, but in the view we take of the case it is not necessary to discuss all of these. We therefore limit the statement to the points necessary to the determination of the appeal.

Plaintiff and her husband were riding in a car owned and driven by Mr. Williamson, a business associate of plaintiff's husband, and were going to a hospital, where plaintiff's husband was to be treated. They were traveling west on Second street. Plaintiff was alone in the rear seat, her husband riding in the front seat with Mr.

Williamson, who was driving. The car was a Reo sedan. Defendant, in a Chevrolet city delivery car, built much like a coach, with doors in the back, being driven by a man employed by defendant, was driving north on Utica avenue. The cars collided a few feet north of the center of the intersection at Second street and Utica avenue. The front end of defendant's car struck the car in which plaintiff was riding on the rear portion of the left side, damaging the left rear fender and the running board. The apron was damaged, the glass in the right rear door was broken, there was a dent in the left rear door and another in the body of the car over the left rear fender. Williamson got out of his car, went to defendant, inquired his name, then went to a nearby telephone and called the police station. He did this because he wanted someone to admit that he was going to take care of the damages on his car. If defendant had not promised to pay for the damages he was going to have him detained. In response to his call at the police station two policemen came to the scene, also an ambulance and a wrecker, but it seems neither of these was used. Defendant agreed to pay Williamson for the repair of Williamson's car. It was repaired at a cost of about $30, which defendant paid. Defendant and his driver were asked to go to the police station to make a report. They were kept there about two hours at least, thinking someone might make some further request respecting them, but as none was made they were discharged. Williamson did not see defendant's car until it was within about four feet of him. He then speeded up, but stopped on being struck. He had not been looking to the left for traffic, but had been looking straight ahead. Plaintiff did not look for traffic at the intersection, but was relying on Williamson as an experienced driver and was paying no attention to other cars.

The ordinance of the city of Tulsa, received in evidence, provides, among other things:

"Sec. 8. *Restriction as to Speed.* (a) Any person driving a vehicle on a street shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the street, and of any other condition then existing, and no person shall drive any vehicle upon a street at such a speed as to endanger the life, limbs or property of any person. (b) Subject to the provisions of subdivision (a) of this section, and except in those instances where a lower speed is specified in this ordinance, it shall be *prima facie* lawful for the driver of a vehicle to drive the same at a speed not exceeding the following:

"3d. Fifteen (15) miles per hour when approaching within fifty (50) feet and in traversing a street intersection, except on boulevards when the driver's view is obstructed. . . .

"4th. Twenty (20) miles per hour on any street, except where a different speed is provided by this ordinance; and,

"5th. Twenty-five (25) miles per hour on any boulevard as defined by this ordinance.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Sec. 18. *Right of Way.* When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, . . . The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection. . . .

"The above provisions as to the right of way shall hold with respect to intersections along boulevards, except that vehicles approaching on intersecting streets shall come to a full stop before entering or crossing a boulevard.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Sec. 56. *Boulevards Established.* The following streets and portions of streets are hereby designated as boulevards and, after adequate signs have been erected at all intersections to warn drivers of vehicles from intersecting streets to come to a full stop before entering the boulevards, and restrictions, as defined in the preceding section, shall be in effect:

"East Second street—east from the west line of Elgin avenue to the east line of First Place street, . . ."

There is no evidence that Utica avenue intersected that portion of East Second street which, by the ordinance, was to be designated as a boulevard "after adequate signs have been erected at all intersections," etc., nor is there any evidence that the stop signs had been put up on Utica avenue where it intersected with Second street at the time or prior to the collision in question. There was a sharp conflict in the evidence as to whether plaintiff's disabilities testified to at the trial were caused by the collision; also, whether the collision occurred at Second street and Utica avenue, or at Third street and Utica avenue. The verdict of the jury favorable to plaintiff on those controverted questions settles them so far as this court is concerned.

The jury answered special questions as follows:

"1. Is it not a fact that the Williamson car was traveling 20 to 22 miles per hour as it approached and entered the intersection where the collision occurred? A. Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"3. Is it not a fact that the collision occurred at the intersection of Third street and Utica avenue? A. No.

"4. Is it not a fact that Mr. Williamson was the agent of the plaintiff and her husband for the purpose of taking them to the doctor's office? A. No.

"5. Was the collision an accident as defined to you in the court's instructions?  A. Yes.

"6. If you find for the plaintiff, in what respects do you find the defendant negligent?  A. By not stopping at stop sign.

"7. Were Williamson, the plaintiff and her husband engaged in a joint enterprise?  A. Yes.

"8. Do you find that plaintiff did not see defendant's car until it had entered the intersection and after it was too late to avoid the collision?  A. She did not.

"9. Do you find that plaintiff did not see defendant's car until the car in which she was riding had entered the intersection?  A. She did not.

.     .     .     .     .     .     .     .     .     .     .     .     .

"11. If the Williamson car had been under control and traveling at a rate of speed not exceeding 15 miles per hour as it approached and entered the intersection, would the collision have been avoided?  A. Was under control—but could not have been avoided.

"12. How fast was defendant's car traveling when it entered the intersection?  A. 12 miles."

Defendant moved for judgment on the answers to the special questions notwithstanding the general verdict. This motion was overruled, and this ruling is one of the things defendant complains of on this appeal.

In support of his contention that his motion for judgment on the answers to the special questions should have been sustained, appellant argues, *first*, that by the answer to question 5 the jury found the collision to be an unavoidable accident for which no one was to blame. The jury found the collision to be an accident as defined in the court's instructions. The trouble is, the court gave no instructions on that point except as it stated the defenses pleaded by defendant in his answer. Such an instruction was requested by defendant and refused. Under the facts in this case it was not error for the court to refuse to give that instruction, but, having refused to give it, the court was not justified in submitting to the jury special question No. 5. It is futile to ask a jury a question on a point "as defined by the court's instructions" when no instructions pertaining thereto are given.

Appellant next argues that the answers to the special questions disclose that plaintiff was guilty of negligence which contributed to her injury, if any she sustained. The jury found that the car in which plaintiff was riding was traveling at the rate of 20 to 22 miles per hour and defendant's car 12 miles per hour. The evidence disclosed both Second street and Utica avenue were paved about the same width. The collision occurred just a few feet north of the

center of the intersection. Since the car in which plaintiff was riding was traveling almost twice as fast as defendant's car, it is clear defendant's car entered the intersection first. Plaintiff alleged as one of the grounds of defendant's negligence, that defendant had violated the city ordinance which reads:

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

But the same section of the ordinance introduced in evidence by plaintiff contains also this provision:

"The driver of a vehicle approaching but not having entered the intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, . . ."

At the speed the jury found the cars were traveling it is clear defendant's car entered the intersection when the car in which plaintiff was riding was approximately fifteen feet east of the intersection, hence, under this ordinance and under the facts as found by the jury, defendant had the right of way, and it was the duty of the driver of the car in which plaintiff was riding to turn to the left and go behind defendant's car. Instead of doing so he gave no attention to other cars in or near the intersection, but drove straight ahead. In answer to question 7 the jury found Williamson, plaintiff and her husband were engaged in a joint enterprise. We are not called upon to determine whether this finding was justified under the evidence, for no complaint is made of it and it stands as the finding of the jury binding on the parties in this court. (*Clark v. Railroad Co.*, 115 Kan. 823, 224 Pac. 920.) The evidence was that the driver of the car in which plaintiff was riding did not see defendant's car until it was within four feet of his car, and the findings in answer to questions 8 and 9 are that plaintiff did not see defendant's car until the car in which she was riding was in the intersection. The city ordinance required care, not only on behalf of plaintiff but on behalf of the driver of the car in which she was riding, at intersections, and the fundamental principles of due care also required it. Since plaintiff and the driver of the car in which she was riding were engaged in a joint enterprise the negligence of the driver is imputed to plaintiff. (*Howard v. Zimmerman*, 120 Kan. 77, 242 Pac. 131.) Under the findings of the jury it necessarily follows plaintiff was guilty of negligence which contributed to her injury.

In answer to question 6 the jury found defendant to be negligent "by not stopping at stop sign." Appellant contends this is not an act of negligence alleged by plaintiff in the petition, or shown by the evidence in the case. In the petition defendant was charged with negligence in three respects: *First,* that defendant did not yield the right of way to the car in which plaintiff was riding, as required by the city ordinance. Under the findings of the jury, as we have seen, defendant had the right of way, having first entered the intersection; hence, the jury did not find the defendant guilty in that respect. Defendant was charged with negligence, *second,* in that the brakes of his car were defective so that he was unable properly to control the speed and movements of his car. On this point there was a conflict of evidence. The jury did not find defendant negligent in that respect. Defendant was charged with negligence, *third,* in failing to have the windows and windshield of his car clean and in such condition that he could see through them and observe the movements of other cars. There was no evidence to support this allegation of negligence and the jury did not find him negligent in that respect. Nowhere in the petition is it alleged that there were stop signs on Utica avenue at Second street. It is not even alleged in the petition that Second street was a boulevard, or even that it was a through street. There was testimony on behalf of plaintiff that Second street was a through street, and plaintiff testified that she understood by that term that vehicles on Second street had the right of way. But with respect to the right of way, plaintiff pleaded the ordinance of the city, which specified the circumstances under which a vehicle had the right of way. The ordinance established a portion of East Second street (whether Utica avenue crossed that portion of Second street is not disclosed) as a boulevard "after adequate signs have been erected at all intersections to warn drivers of vehicles from intersecting streets to come to a full stop before entering the boulevards." There is no evidence in the case that stop signs had been erected on Utica avenue at Second street at the time of the collision in question. There is evidence that such stop signs were so located at the time of the trial of this case, nearly a year after the collision, but that, of course, could have no bearing upon the conditions existing at the time of the collision; hence, there is no evidence to sustain the finding that defendant was negligent "by not stopping at stop sign." But, passing the question of evidence on

the subject, there was no allegation in the petition that defendant was negligent because he did not stop at a stop sign. The finding of the jury, in answer to question 6, was favorable to defendant on all acts of negligence charged in the .petition. Defendant cannot be held liable for negligence which was not alleged. (*Telle v. Rapid Transit Rly. Co.*, 50 Kan. 455, 31 Pac. 1076; *McBeth v. Railway Co.*, 95 Kan. 364, 148 Pac. 621; *Martin v. City of Columbus*, 96 Kan. 803, 153 Pac. 518; *Case v. Yoakum*, 99 Kan. 253, 161 Pac. 642.)

It was error for the court to overrule defendant's motion for judgment on the answers to the special questions notwithstanding the general verdict.

The judgment of the court below is reversed with directions to enter judgment for defendant.