No. 31,776

J. H. COFFMAN, *Appellee,* v. H. S. SHEARER, *Appellant.*

(34 P. 2d 97.)

Opinion filed July 7, 1934.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs, R. H. Nelson,* all of Wichita, *C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellant.

*Ralph Knittle* and *Alex H. Miller,* both of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained by plaintiff when he was struck, knocked down and injured by defendant's automobile at a street crossing in Salina.

The *locus in quo* was as follows: Santa Fe avenue in Salina runs north and south. It is the principal street in the city, and its center is occupied by a street railway. Walnut street runs east and west. At the intersection corners of Walnut and Santa Fe are "stop-and-go" traffic signals.

On the afternoon of March 6, 1932, the streets were covered in some places and to some extent with ice and snow. While plaintiff and his wife were crossing Santa Fe avenue eastward on the south side of Walnut Mrs. Coffman slipped and fell. Plaintiff helped her partly to her feet, but she slipped and fell a second time. Then plaintiff stooped to assist her, with his back toward the south. At that moment defendant's automobile moving northward on Santa Fe avenue collided with the plaintiff, knocked him down and inflicted serious, painful and lasting injuries.

In this action plaintiff charged defendant with negligence in various respects:

That at the time of collision the crossing signals were against defendant and that plaintiff had the right of way, and—

"Plaintiff further alleges that said streets were at said time covered with snow and ice, and alleges that at the time plaintiff was assisting his wife to her feet as aforesaid, plaintiff was in the plain view of defendant, but plaintiff alleges that notwithstanding plaintiff was in the plain view . . . the defendant, wholly disregarding the rights of the plaintiff, willfully, carelessly, negligently, recklessly and wantonly drove his said automobile toward, on, against and over the plaintiff and into said intersection, and willfully, negligently, recklessly and carelessly drove said automobile at said time on said street when the same was covered with snow and ice without having chains or other devices on the tires of said automobile so that he could stop said auto-

mobile quickly, and without making any effort to stop said automobile before striking plaintiff and before entering said intersection. Plaintiff alleges that he does not know the exact speed defendant was driving at said time, but alleges that defendant was driving at a speed that was greater than was proper at the time, had the defendant exercised due care and caution and had regard for the rights of plaintiff and the traffic on said street, and said speed was contrary to law."

"Plaintiff further alleges that . . . if defendant had exercised ordinary care and diligence in looking ahead while driving toward the plaintiff at said time, he could have observed plaintiff and could have observed that plaintiff had the right of way in crossing said street, and defendant could have observed that the traffic going north and south at said intersection was stopped and defendant could have stopped his automobile in time to avoid striking the plaintiff as aforesaid."

Defendant's answer was a general denial and a plea of contributory negligence.

Jury trial; general verdict for plaintiff, and special findings, some of which read:

"4. Was defendant driving north on Santa Fe avenue on the east side of the street-car tracks at the time the plaintiff's wife fell? A. No.

"5. Was the defendant's car about fifteen feet south of the plaintiff when plaintiff's wife fell? A. No.

"6. If you answer the last question 'no,' then state how far south it was. A. Fifty to seventy-five feet.

"7. Was defendant driving at about eight or ten miles per hour at the time plaintiff's wife fell? A. No.

"8. If you answer the last question 'no,' then state his rate of speed at that time. A. Fifteen to twenty miles per hour.

"9. Did the defendant put on his brakes in an effort to avoid a collision with the plaintiff as soon as plaintiff's wife fell? A. No.

"12. Was the plaintiff's injury the result of an unavoidable accident? A. No.

"13. Was the defendant guilty of any negligence which was the proximate cause of the plaintiff's injury? A. Yes.

"14. If you answer the last question 'yes,' then state specifically of what said negligence consisted. A. Driving too near center of street. Not paying enough attention to pedestrians. Not using ordinary care."

Judgment was entered for plaintiff and defendant appeals, urging various errors, the first of which is that he was entitled to judgment on the special findings of the jury, particularly Nos. 13 and 14. He contends that these findings were not within the scope of the allegations of negligence charged in plaintiff's petition, and were in effect an acquittal of whatever allegations of negligence were charged against him.

It is, of course, elementary that in an action for damages for negligence the failure of the jury to find a defendant guilty on any ground of negligence charged in the petition is conclusive in his favor and judgment must be ordered accordingly irrespective of the general verdict. (*McBeth v. Railway Co.*, 95 Kan. 364, 148 Pac. 621; *Lahmeyer v. Massey*, 137 Kan. 566, 573, 21 P. 2d 380.)

In *Parks v. Railway Co.*, 100 Kan. 219, 163 Pac. 1066, it was held:

"In an action founded upon negligence where the jury find generally for the plaintiff, but in a special finding declare that the negligence of the defendant consisted of something not charged in the petition, it is the duty of the court to render judgment in defendant's favor. . . ." (Syl. ¶ 2.)

Touching the jury's finding of negligence, that defendant was "driving too near the center of the street," it is perfectly clear that no such charge of negligence was alleged in the petition. We need not enter now upon the further question whether such an act on defendant's part, if alleged and proved, would have constituted negligence. So far as concerns the third finding of negligence that defendant was "not using ordinary care," this finding was not a finding of fact, but a conclusion of law. The jury were asked to state specifically what was the negligence of defendant. Negligence was defined by the trial court as want of ordinary care. So the jury's answer was merely that defendant was wanting in ordinary care because he was not using ordinary care.

But be that as it may, the jury did specify one finding of negligence which was fairly within the scope of the allegations of plaintiff's petition. That finding was that defendant was "not paying enough attention to pedestrians." The circumstances spoke rather strongly, that if guilty of negligence at all, defendant's negligence consisted in his failure to pay sufficient attention to those two pedestrians in the middle of the street, plainly in sight, and who for the moment were in a predicament where they were unable to help themselves, but where it was perhaps entirely feasible—a jury question—for defendant to have avoided hitting one of them, the plaintiff, if defendant had been giving due regard to the rights of pedestrians at the street crossing and had operated his car under proper control as he approached the street intersection, and especially so when the street crossing signal at the time was set against him. Consequently it must be held that defendant was not entitled to judgment on findings 13 and 14.

It is next contended that the jury's findings Nos. 6 and 8 were not supported by the evidence. It is extremely difficult to discern any such evidence in the record. In plaintiff's brief an attempt is made to answer this point, but his counsel does not quote or cite any testimony to such effect. The testimony in defendant's behalf was that his automobile was not more than twelve to fifteen feet south of plaintiff when Mrs. Coffman fell. Other testimony was that his automobile was not more than seven or eight feet from plaintiff when plaintiff stooped to help her up. Now the jury, if so disposed, was privileged to reject all this testimony as untrue; but it was the only evidence on the subject, and therefore defendant's contention that finding No. 6 was not supported by the evidence seems to be established. And the same situation appears in respect to finding No. 8. Defendant's witnesses testified that as he was coming north towards the point of collision his car was running slowly because he was looking for a place to park. They estimated its speed variously at eight miles per hour, eight to ten miles, twelve to fifteen miles per hour. These estimates may have been inaccurate or uncandid, but there was no other testimony on the subject. Counsel for plaintiff direct attention to the fact that there was evidence that defendant's car, as it proceeded southward on Santa Fe avenue shortly before the accident, was traveling at about fifteen miles an hour. But that fact had no probative force as to the speed of the car after it turned and came northward, and while defendant was looking for a place to park.

This court is not inclined, however, to attach controlling significance to these estimates of speed nor to permit this cause to turn wholly upon these findings nor the want of evidence to support them. In so far as there may have been a real defense to this lawsuit it was that the collision was an accident pure and simple, that Mrs. Coffman's fall and plaintiff's act of stooping over to help her up were so unexpected that defendant, although driving slowly, could not stop in time to avoid hitting plaintiff because of the slippery condition of the streets. Such a defense presented a fair problem for a jury's determination on competent evidence and under adequate instructions. Here the court's instructions are not complained of.

The next error assigned relates to the introduction of incompetent testimony and the failure of the court to direct the jury to disregard

it. When the accident occurred defendant and others of his motor-car party alighted and aided in carrying plaintiff to an office building near the corner of the street intersection, and a doctor and ambulance were promptly called. After testifying as to the facts of the accident plaintiff's wife also testified to a conversation she had with defendant Shearer as follows:

"Mr. Shearer, the defendant, helped pick my husband up and took him into the office of the Kansas Pipe Line and Gas Company. . . .

"Q. Did Mr. Shearer talk with you any there while Mr. Coffman was lying on the table? A. Yes, sir.

"Q. Just give the conversation. A. Mr. Shearer came up and introduced himself as Mr. Shearer, and I told him that we were Mr. and Mrs. Coffman, and he said he was terribly sorry about the accident and told me not to worry; that we would probably be—that we would be taken care of—and he said he had a liability insurance to the amount of $50,000 for just such an emergency as this.

"COUNSEL FOR DEFENDANT: We will ask that be stricken out as not proving or tending to prove any issue in this case, and it is highly prejudicial and put in for that purpose.

"THE COURT: The motion is overruled.

"COUNSEL FOR DEFENDANT: The attorneys for the plaintiff and the witness both know that this evidence is incompetent and highly prejudicial and what this conversation would develop. And it was put in for that purpose.

"COUNSEL FOR PLAINTIFF: It was not put in for that purpose *or any other purpose*. We just want to show the whole conversation.

"THE COURT: It doesn't make any difference. The jury has heard the testimony and the motion is overruled."

Defendant contends that under well-considered precedents the admission of the wife's testimony touching the vast amount of liability insurance carried by defendant was erroneous and prejudicial. It would appear that in a damage suit for personal injury the inadmissibility of such testimony and of the trial court's duty to exclude it is no longer a subject of fair debate in this jurisdiction. And not only so, but it is only when such testimony gets into the record inadvertently that its admission can be cured by a peremptory order of the court to strike it out and for the jury to disregard it. (*Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826.) Where it has been deliberately brought into the case the presumption is that it was done to influence the jury improperly, and a mistrial should be declared. (*Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737; *Crossler v. Safeway Stores, Inc.*, 51 Ida. 413, 80 A. L. R. 463; 20 R. C. L. 178.) See, also, notes on the impropriety of informing the jury that defendant in a damage suit for personal

injuries carries liability insurance in 56 A. L. R. 1418 and 74 A. L. R. 849, where all the leading cases are collected and exhaustively discussed. In *Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721, defendant himself brought the fact of liability insurance into the record, and the case is otherwise distinguishable.

In their brief, counsel for plaintiff seek to justify the elicitation of the testimony pertaining to the liability insurance on the theory that it was part of a conversation in which defendant made a statement acknowledging his negligence and responsibility for the accident. At the trial, counsel denied that the evidence was elicited for the purpose of prejudicing the jury. He declared, "It was not put in for that purpose *or any other purpose.* We just want to show the whole conversation." The whole of any conversation is not necessarily either probative, relevant or competent, and yet it may be highly prejudicial. Let us examine the language of the defendant, as testified to by Mrs. Coffman, which is said to indicate defendant's admission of negligence. "He said he was terribly sorry about the accident and told me not to worry, that we would probably be—that we would be taken care of . . ." So much of the conversation may be fairly susceptible of a construction that defendant was admitting that he was to blame for the accident— mayhap it was a fair question for the trial court and jury. But counsel for plaintiff should have made it clear to his witness before she took the witness chair that the question of defendant's negligence was in no way related to the fact, if true, that he had insurance covering his liability for damages, and should have cautioned her that she would inevitably ruin her husband's seemingly good case if the matter of such a fabulous amount of liability insurance was lugged into the record. It must be held that the objection of defendant to the testimony was valid; it should have been sustained; and the failure of the trial court to censure counsel for injecting it (*Holloway v. Telfer,* 136 Kan. 80, 83, 12 P. 2d 826) and its refusal to summarily instruct the jury to disregard it constituted prejudicial error.

The judgment is reversed, and the cause remanded for a new trial.

BURCH, J., not sitting.