No. 34,459

SARAH BILSKY, *Appellee*, v. CENTRAL SURETY AND INSURANCE CORPORATION, *Appellant* (A. R. McFARLAND and MRS. R. R. McFARLAND, *Appellees*).

(96 P. 2d 691)

Opinion filed December 9, 1939.

*Fred Robertson, Edward M. Boddington* and *J. O. Emerson,* all of Kansas City, for the appellant.

*H. S. Roberts,* of Kansas City, *C. R. Krimminger* and *A. C. Popham,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The action was for damages resulting from an automobile collision. From a judgment in favor of plaintiff defendant brings this appeal.

The plaintiff, Sarah Bilsky, is a teacher in the public-school system of Kansas City, Mo. The defendant, Central Surety and Insurance Corporation, was the insurance carrier on the truck involved in the accident, belonging to Goldenstern Pipe and Supply Company and being driven by Roy Ray. Neither the owner of the

truck nor the driver was made a party to the suit. The defendants, Mr. and Mrs. McFarland, owned and were driving one of the automobiles involved in the accident.

Genevieve Jones was the owner of a Plymouth car, and she and the plaintiff, Miss Bilsky, together with Mrs. Jones, a woman 68 years of age, started from Kansas City, Mo., in the automobile of Genevieve Jones for a trip to Mexico City, a round-trip distance of 3,600 miles. Besides the three persons in the Jones car, their baggage, packages, grips, etc., were also loaded in.

On the second day of their trip to Mexico City the Jones car was traveling southward on highway 81 about twenty-two miles south of Wichita, and about seven or eight miles north of Wellington, near Riverdale. Approaching them from the south was a truck and trailer of Goldenstern Pipe and Supply Company, operated by Roy Ray, which was bound for Wichita. The truck went up a rise about a mile south of Riverdale, traveling northward, and as it did so the Plymouth car of the defendants, Mr. and Mrs. McFarland, followed the truck, also traveling northward.

As the truck started over the top of the rise about a mile south of Riverdale, traveling northward, the McFarland car, driven by Mrs. McFarland, turned out to the left in order to pass the truck on the long gradual downgrade to the north. As the McFarland car passed the cab of the truck the truck was traveling 25 to 30 miles per hour, and the McFarland car 40 to 45 miles per hour. The McFarland car proceeded forward on the left-hand side of the 18-foot slab until it got 50 to 60 feet ahead of the truck. It then turned to the right at an angle of 45 degrees to get on its right side of the road in front of the truck, and traveled over until the right front wheel went off of the slab and onto the shoulder. Thereupon Mrs. McFarland immediately turned her car to the left and "flipped" it back on the pavement, and went across the pavement to the northwest at an angle of 45 degrees, and collided with the Jones car, in which the plaintiff was riding. At that time the Jones car had either stopped or was moving slowly.

The truck driver testified that as the McFarland car passed the truck he took his foot off the throttle and applied the brakes; that when he saw the wheel of the McFarland car go off the pavement and then the car turned suddenly to the left across the road in front of him he put his brakes on hard and slid his wheels; and believing that he had the best opportunity to avoid a collision by turning to

the left, he turned his truck to the left in an attempt to miss the McFarland car, but raked the left side of it and went over with his front wheel in the ditch to the west side of the road and stopped there.

There was some dispute in the plaintiff's evidence as to whether the truck contacted the McFarland car just before or after the Mc-Farland car collided with the Jones car in which plaintiff was riding.

The road at this point was sixty feet wide between fences, and there was a moderate ditch over near the fence at the west side. The slab was eighteen feet wide, and the shoulders on each side twenty-one feet. When the right front wheel of the McFarland car ran off the right side of the slab onto the shoulder there were no obstructions ahead on the shoulder, and nothing to prevent the McFarland car continuing partly on the shoulder and partly on the slab until it safely passed the Jones car.

After the accident the Jones car was facing to the southwest or to the west, and partly on the slab, the McFarland car was hooked to it, bumper to bumper, and facing in a northwesterly direction, and the truck was along the left side of the McFarland car and slightly ahead of it, but they were not hooked together.

The impact against the Jones car in which the plaintiff was riding caused it to be pushed north and to the west a distance of five to ten feet. The Jones car was a Tudor sedan, with folding front seats. Mrs. Lillian Jones, who was sitting in the back seat, is a woman of large stature, and the impact threw her forward against the front seat, causing the seat to be pushed forward against the plaintiff, throwing her forward against the dashboard and then down on the floor. When the plaintiff was thrown forward her abdomen struck a thermos jug which was on the floor of the car. The impact caused the injuries complained of in this action.

The charge of negligence against the operator of the truck is stated in the petition:

". . . that at the aforesaid time and place the said Goldenstern Pipe & Supply Company, by its agent, servant or employee, whose name is unknown to plaintiff at this time, then and there operating said Diamond T truck, within the scope of said company's business, did operate said truck at a high, danger-ous and reckless rate of speed, in excess of forty-five miles per hour, and did carelessly and negligently fail to slow or decrease the speed of said truck at said time and place or to have stopped same and did carelessly and negligently fail to use the appliances and equipment at hand to adequately control the movement of said truck, all of which said company and its agent carelessly and negligently failed to do, and thereby and as a result thereof caused said

truck to be driven violently against, upon and into said Plymouth motor car which had simultaneously run into said truck, . . ."

The answer of the defendant insurance company denied the charge of negligence against the operators of the truck, and alleged that the plaintiff and the driver of the automobile in which she was riding were engaged in a joint enterprise, and that the plaintiff and the driver of the car were guilty of negligence which was the direct and proximate cause of plaintiff's injuries. Plaintiff's reply contained a general denial of the allegations in the answer.

The jury returned a verdict against the defendant insurance company in the sum of $10,000, and returned the following answers to special questions:

"1. If you find that the driver of the truck, Roy Ray, was guilty of any negligence, state specifically what such negligence was? A. Excess of speed for braking equipment on truck and trailer. Lack of caution in watching traffic.

"2. If you find that the plaintiff received any injuries in the accident, state what the proximate cause of such injuries was? A. The impact of truck and car with car in which the plaintiff was riding.

"3. Did the plaintiff receive any injuries in the accident? A. Yes.

"4. If you answer 'yes' to the foregoing question, state specifically what such injuries were? A. Head injury, injury to sacro-iliac joint, injury in her abdominal region.

"5. At the time the plaintiff was operated on in January, 1938, was her ailment chronic interstitial appendicitis? A. Apparently, yes.

"6. If you find that the plaintiff has at this time any ailments resulting from the accident state specifically what such ailments are? A. Sacro-iliac sprain, abdominal injury.

"7. Did the truck strike, or run against the McFarland car after the McFarland car had passed the truck and before the collision between the McFarland and Jones cars? A. Yes.

"8. If you answer question No. 7 in the affirmative, then state whether or not the striking of the McFarland car by the truck caused the driver of the McFarland car to lose control of the operation of her car? A. Yes.

"9. What do you find to be the proximate cause of this accident? A. Speed and lack of brakes on trailer."

Judgment having been rendered on the verdict in favor of the plaintiff, the defendant insurance corporation filed a motion for judgment in its favor for the reason that the answer of the jury to special question No. 1 shows that the Goldenstern Pipe and Supply Company and its truck driver were not guilty of any negligence in issue in the case, or alleged in the amended petition; that such finding was contrary to the allegations in the petition, and that such answer shows that neither the Goldenstern Pipe and Supply Com-

pany nor its driver was guilty of any negligence submitted by the court in its instructions to the jury. Error is assigned in overruling that motion, in overruling defendants' demurrer to the evidence, in overruling defendants' motion to set aside the answers to special questions 2 to 9, and defendants' motion for a new trial.

In answer to question No. 1 as to the negligence of the truck driver, the jury answered: "Excess of speed for braking equipment on truck and trailer. Lack of caution in watching traffic." In answer to question No. 9 the jury answered that the proximate cause of the accident was "speed and lack of brakes on trailer."

There was no charge in the petition that the truck or the trailer was not supplied with brakes or that the brakes were defective; on the contrary, it was alleged that the operator of the truck "did carelessly and negligently fail to use the appliances and equipment at hand to adequately control the movement of said truck." It was charged that the driver of the truck, then and there at the time and place, could have seen the approaching car in which plaintiff was riding, and by the exercise of due care and caution in using the appliances and equipment at hand could have stopped the truck, or turned or swerved it to one side, or decreased or lowered the speed in time to have avoided the collision. These were the issues of negligence charged in the petition and submitted to the jury by the instructions.

The driver of the truck, called as a witness by plaintiff, testified that his brakes were in good condition and were operating properly, that they were hydraulic brakes and operated on six tires that were six inches in diameter. There was no charge of negligence in the failure to have brakes on the trailer.

"Lack of caution in watching traffic" was not charged in the petition or submitted to the jury. The evidence of the plaintiff's witness, the truck driver, showed that he was watching the traffic, that he saw and appreciated the conditions on the road and took action accordingly. Not only was "lack of caution in watching traffic" not an issue, but there was no evidence in the record to support the finding.

In answer to special questions Nos. 1 and 9, the jury did not find the driver of the truck was guilty of excessive speed under the circumstances, but excessive speed for the braking equipment. The testimony showed the truck was traveling at 25 or 30 miles per hour. The McFarlands testified that when they passed the truck, the

driver "raced" them. But at the same time these witnesses testified that they did pass the truck and that their car did not exceed 40 or 45 miles per hour. There was no charge and no evidence that the truck was moving at excessive speed for the braking equipment.

In *Parks v. Railway Co.*, 100 Kan. 219, 163 Pac. 1066, it was held:

"In an action founded upon negligence where the jury find generally for the plaintiff, but in a special finding declare that the negligence of the defendant consisted of something not charged in the petition, it is the duty of the court to render judgment in defendant's favor. (*McBeth v. Railway Co.*, 95 Kan. 364, 148 Pac. 621; *Spinden v. Railway Co.*, 95 Kan. 474, 148 Pac. 747.)" (Syl. ¶ 2.)

In *Coffman v. Shearer*, 140 Kan. 176, 179, 34 P. 2d 97, it was said:

"It is, of course, elementary that in an action for damages for negligence the failure of the jury to find a defendant guilty on any ground of negligence charged in the petition is conclusive in his favor and judgment must be ordered accordingly, irrespective of the general verdict. (*McBeth v. Railway Co.*, 95 Kan. 364, 148 Pac. 621; *Lahmeyer v. Massey*, 137 Kan. 566, 573, 21 P. 2d 380.)"

It is a well-settled rule in this state that in an action for damages on various allegations of negligence, where the jury makes specific findings as to what particular act or acts of negligence defendant committed, such findings exonerate the defendant of all other charges of negligence alleged in plaintiff's petition. (*Brim v. Atchison T. & S. F. Rly. Co.*, 136 Kan. 159, 12 P. 2d 715; *Jones v. A. T. & S. F. Rly. Co.*, 148 Kan. 686, 692, 85 P. 2d 15.)

As there was no charge in the petition that the driver of the truck was guilty of the acts of negligence found by the jury in answer to special question No. 1, or that the failure to have brakes on the trailer was a legal cause of the collision, it is clear that the case falls within the rules above stated. The only negligence the jury found the driver of the truck had committed was "excess of speed for braking equipment on the truck and trailer," and "lack of caution in watching traffic." The petition alleged that he failed "to use the appliances and equipment at hand" to adequately control the movement of the truck. The special finding exonerated the driver of the charge of negligence set forth in the petition.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.