No. 45,912

Orville P. Abston, *Appellee*, v. Medora Grain, Inc., Edward L. Elliott and Frank O. Hoffman, *Appellants*.

(482 P. 2d 692)

Opinion filed March 6, 1971.

*Brian G. Grace* and *Charles W. Harris*, of Weigand, Curfman, Brainerd,

Harris & Kaufman, of Wichita, argued the cause, and *George A. Robb*, of Somers & Robb, of Newton, was with them on the brief for the appellants.

*Vernon A. Stroberg*, of Speir, Stroberg & Sizemore, of Newton, argued the cause, and *Herbert H. Sizemore*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Orville P. Abston, brings this action against Medora Grain, Inc., and its employees, Edward L. Elliott and Frank O. Hoffman, who together will be designated as defendants, to recover damages sustained in an accident occurring at the junction of U. S. Highway 50 and County Road 811 west of Newton. Judgment was recovered against the three defendants and all have appealed.

Briefly summarized, the evidence discloses that about 9:30 p. m. the appellee, Abston, to whom we shall refer as plaintiff, was driving his Oldsmobile car west on U. S. 50, accompanied by a friend, when a truck loomed up about 250 to 300 feet ahead standing diagonally across the intersection, and headed in a northwesterly direction. The plaintiff began to pump his brakes and attempted to pass around the truck to the north or right-hand side, but his car went into a skid, causing it to strike a guardrail at the northwest corner of the intersection, whence it plummeted into a creek bed below.

The offending truck, being a tractor-trailer combination, was owned by Medora Grain, Inc., and had been driven to Wichita that day by the defendant Elliott with a load of cattle. Elliott was accompanied on the trip by the defendant Hoffman, a fellow employee. Sometime after delivering and unloading the cattle, the two men started back to the metropolis of Medora, following a route which took them north on the county road toward its intersection with U. S. 50, an east-west highway.

As he came to the junction of the two roads, Elliott stopped his truck at the stop sign protecting U. S. 50, where he looked toward the east and observed in the distance the headlights of an oncoming car appearing over a small rise or hill. He then proceeded into the intersection and attempted to make a left-hand turn toward the west, at which point his motor suddenly died from mechanical trouble, leaving the truck in possession of the intersection, and there the truck remained, quite motionless, as the plaintiff approached and attempted to pass around it. Further facts will be detailed as they become pertinent.

Originally, the defendants listed six claims of error in their statement of points. However, on oral argument they abandoned point IV, which related to Hoffman's liability, leaving but five points for our consideration.

The first complaint pertains to the trial court's rejection of the defendants' motion for a continuance, made on the morning of the day on which the case was set for jury trial. The prayer of the motion was in the alternative—either for a general continuance or for a continuance, after the jury was selected, to the following day. The reason given in support of the motion was that the defendants' chief counsel—who had prepared the case for trial—had learned late the previous evening that his mother had been operated for gallstones at a Lawrence hospital earlier in the day and his father felt he should be in Lawrence.

Counsel for plaintiff declined to acquiesce in a continuance and stated his objections, prominent among which were that all his witnesses, including doctors, had been subpoenaed and that his client had taken time off from work. In overruling defendants' motion the trial court noted, among other matters, there would be rescheduling problems relating to doctors, and that motion days were set the latter part of the week in both Harvey and McPherson Counties. The court did observe, however, that it would recess earlier than usual that day, and not later than 4 p. m. On oral argument we were advised that the court did recess early, that defense counsel did drive to Lawrence that evening, returning about 3 a. m. and, happily, that counsel's mother had recovered from the operation.

The rule that motions for continuance are addressed to the sound discretion of the trial court is too well embedded in our jurisprudence to require extensive citation of authority. Numerous cases illustrating the rule are found collected in 2 Hatcher's Kansas Digest (Rev. Ed.), Continuances, § 1 and in 3 A West's Kansas Digest, Continuance, § 7. We shall not discuss application of the rule to the peculiar circumstances of the present case other than to say that in our opinion no prejudice has been shown to have resulted to the defendant. The case appears to have been well and thoroughly tried by both sides, and we find no abuse of judicial discretion.

Defendants next contend that the trial court erred in overruling their motions "for judgment at all stages of the proceedings", that is to say, at the close of plaintiff's evidence, again at the close of all

the evidence and, finally, after the verdict was returned. Basically the issue for us to decide, so far as these motions are concerned, is whether the verdict is supported by substantial competent evidence. If the verdict is so supported, then the trial court was correct in submitting the case to the jury and in overruling the defendants' motions for judgment.

Even though we assume, without deciding, that plaintiff's evidence alone was insufficient to justify submitting the case to the jury, the question confronting us remains the same—does the verdict find support in the evidence? In Kansas practice, a motion for directed verdict is tantamount to our former demurrer. (*Ogilvie v. Mangels,* 183 Kan. 733, 737, 332 P. 2d 581; *Fox v. Massey-Ferguson, Inc.,* 206 Kan. 97, 99, 476 P. 2d 646), and we have frequently said that where a demurrer to the plaintiff's evidence is overruled at the conclusion of his case and the defendant does not rest on his demurrer but proceeds with his case, his evidence may cure whatever defects inhere in his adversary's evidence and, at the conclusion of the entire case, the sufficiency of the evidence must be determined from all the evidence, the defendant's as well as the plaintiff's. (*Ziegelasch v. Durr,* 183 Kan. 233, 326 P. 2d 295; *Anderson v. Thomas,* 184 Kan. 240, 336 P. 2d 821; *Weber v. Wilson,* 187 Kan. 214, 356 P. 2d 659; *Bowers v. Gardner,* 187 Kan. 720, 360 P. 2d 17.)

Our decisions in this area accord with what we believe to be the general rule. In 2 B Barron and Holtzoff, Federal Practice and Procedure, § 1074, pp. 372-374, we find it stated this way:

"Technically a party waives his right to a directed verdict, if the motion is made at the close of his opponent's case, and thereafter he introduces evidence in his own behalf. However he may renew the motion at the close of all the evidence. If he fails so to renew the motion, he may not claim error on appeal because of denial of his motion. The renewed motion will be judged in the light of the case as it stands at that time, and even though the court may have erred in denying the initial motion, *this error is cured if subsequent testimony on behalf of the moving party repairs the defects of his opponent's case."* (Emphasis supplied.)

A concise summation of the rule appears in *Smith v. Sharp,* 85 Idaho 17, 375 P. 2d 184:

". . . [I]f the motion [for directed verdict] is renewed and denied by the trial court, the moving party may claim such ruling as error on appeal. In such a case, the appellate court will review the evidence as it stands at the close of the trial." (p. 27.)

The rule is applicable to the situation in this case, inasmuch as

the defendants did not stand on their motion for directed verdict at the close of plaintiff's evidence, as they had a right to do, but proceeded to present their own evidence, as was also their privilege. (See *Weber v. Wilson,* supra.) Accordingly, we turn to an examination of the evidence in its entirety. Before doing this, however, we must refer to certain findings returned by the jury, for the evidence must be evaluated in the light of the findings.

In response to special questions submitted, the jury found that the defendants were guilty of negligence in the following respect:

"If helper in truck behind had time to warn traffic, the helper in Medora truck should of had time to warn traffic also."

In view of certain testimony to which reference will later be made, this finding is not as cryptic as it first may seem. Special findings returned by the jury are to be construed liberally with the view of ascertaining the jury's intention. (5 Hatcher's Kansas Digest, [Rev. Ed.] Trial, § 308, pp. 367, 368.) We entertain no doubt that the jury in this case intended its answer to mean that the defendants' negligence consisted of their failure to warn the plaintiff of impending danger when there was sufficient time for doing so.

This finding of specific negligence exonerates the defendants of all other acts of negligence alleged in plaintiff's petition. (*Bilsky v. Central Surety & Ins. Corp.,* 150 Kan. 858, 863, 96 P. 2d 691; *Jones v. A., T. & S. F. Rly. Co.,* 148 Kan. 686, 692, 85 P. 2d 15; *Elliott v. Chicago, Rock Island & Pac. Rld. Co.,* 203 Kan. 273, 285, 454 P. 2d 124.) Thus our inquiry into the defendants' negligence is limited to this question: Did the defendants fail to give plaintiff warning of the danger when they had sufficient opportunity to do so?

The statute involved, K. S. A. 8-5,108a, provides in substance that whenever a truck, truck tractor or trailer, is disabled on the traveled portion of a highway or shoulder outside of any municipality at a time when lights are required, the driver shall immediately place a lighted fusee, or lighted red electric lantern, or red emergency reflector at the traffic side of the vehicle in the direction of the nearest approaching traffic; and as soon thereafter as possible, but in any event within the burning period of the fusee (15 minutes) he shall place 3 liquid-burning flares, or 3 lighted red electric lanterns, or 3 red reflectors on the traveled portion of the highway in the following order: One, approximately 100 feet away in the center of the lane occupied by the vehicle and toward approaching traffic; one, approximately 100 feet in the opposite direction in

the same lane, and one at the traffic side of the disabled vehicle not less than ten feet rearward or forward in the direction of the nearest approaching traffic.

The defendants do not contend they complied with the foregoing statute, the violation of which was alleged in the plaintiff's petition. Instead, they maintain first, that the evidence conclusively establishes that their failure to display warning devices as required by the statute was not a proximate cause of plaintiff's damage and second, that as a matter of law they could not be held negligent because they had insufficient time in which to give warning.

In support of their first position the defendants argue that the accident would have occurred whether or not warning devices were placed in obedience to the statute's command, and they cite the rule expressed in *Eldredge v. Sargent*, 150 Kan. 824, 96 P. 2d 870 and *Jilka v. National Mutual Cas. Co.*, 152 Kan. 537, 106 P. 2d 665, that where the absence of warning signals does not prevent a driver from seeing a vehicle in time to avoid it, the absence of such signals cannot be said to be the proximate cause of a collision. We acknowledge the rule, but doubt that it compels a verdict in favor of the defendants. At this juncture we might also say that while the trial court refused to submit a requested instruction separately stating this rule, we do not consider its refusal as constituting prejudicial error, in view of other instructions given which correctly define the rights, duties and responsibilities of the several parties to this lawsuit.

The following additional findings returned by the jury become pertinent:

"QUESTION No. 2

"Prior to braking his vehicle, at what speed was Orville Abston traveling as he approached the intersection?

"Answer: 55 miles.

"QUESTION No. 3

"How many feet could Orville Abston see within the range of his headlights under the circumstances that confronted him as he came into the intersection?

"Answer: 300 to 500 feet.

"QUESTION No. 4

"At the time the truck first came into the range of plaintiff's vision, as provided by his headlights under the circumstances that confronted him, what, if anything, prevented him from avoiding the collision?

"Answer: Nothing that he did not do.

"QUESTION No. 6

"At the speed he was traveling as he approached the intersection, if he was watching in a careful manner, could Orville Abston have stopped or turned aside his vehicle in time to avoid a collision with the truck or the guard rail?

"Answer: He could have stopped if he had of stayed on blacktop, but an ordinary person would of reacted as Mr. Abston."

The defendants argue that since the plaintiff could see for a distance of 300 feet within the range of his headlights, and since he was traveling at 55 miles per hour, (all of which the jury found) he could have stopped his car before reaching the stalled truck, irrespective of warning signs. Under ordinary circumstances this might be true, but the argument completely overlooks the fact that the evidence stands undisputed in this case that there was loose gravel and sand on the blacktop which would increase the plaintiff's braking distance, and that his braking was not doing him much good.

The jury might well have believed that ordinary braking distances were not controlling under this evidence, and that had the warning devices been placed on the highway as the statute requires, the plaintiff would have seen and been warned of danger early enough, and at a distance far enough away, to have brought his vehicle safely to a stop. Such, indeed, would appear to be implicit in the verdict.

As to whether sufficient time had elapsed for warning signals to have been put in place, the evidence was at variance. Mr. Hoffman, who was riding in the truck with Mr. Elliott, estimated that 25 or 30 seconds had intervened between the time the truck had stalled and the accident occurred. However, two defense witnesses who were at the scene had different ideas concerning the time element. One of them testified that not more than a minute could have elapsed, while the other witness estimated the intervening time as being "two, three, or four minutes." In our opinion the evidence was such that the jury was justified in finding that there had been sufficient time for giving the statutory warning.

We proceed to the question of contributory negligence, a matter which is argued with considerable vigor. Much of what we have said concerning proximate cause is relevant to this contention as well. The defendants stress the "range of vision" rule and say that had plaintiff been exercising reasonable care he could have stopped his car before reaching the ailing truck. This

again ignores the undisputed evidence that plaintiff's car went into a skid upon striking loose gravel.

Nor can plaintiff be faulted for steering his car onto the blacktop shoulder of the highway in an effort to go around the immobile truck which blocked the highway. It is a well established rule that one who acts in an emergency not of his own making is not held to the same degree of judgment which would be required under more propitious circumstances, where time exists for reflection. In *Trinity Universal Ins. Co. v. Farmers Co-operative Exchange of Morland,* 171 Kan. 501, 233 P. 2d 468, it was said:

"The rule in this state is that one who in an emergency acts according to his best judgment or who, because of want of time in which to form a judgment, omits to act in a most judicious manner, is not chargeable with negligence." (Syl. ¶ 2.)

The rule appears appropriate to the instant situation. In our view, it would be foolish, or at least unrealistic, to deny that the sight of a large motionless truck athwart the highway, suddenly emerging from the stygian of darkness of night, would be a traumatic and shattering experience for an unwary motorist. One who proceeds along today's high-speed highways does not expect, in the ordinary course of events, to be confronted with such an awesome episode and, happily, he is not often subjected to that sort of occurrence.

We find a suggestion in the defendants' brief that since there was nothing to obstruct plaintiff's view of the intersection for approximately half a mile—as the jury found—he was negligent in not observing the cattle truck until he had reached a point just 250 or 300 feet away. The suggestion is baseless. In the first place, there is no evidence that plaintiff could see for half a mile at night, even though there were no physical obstructions within that distance. The jury found he could see but 300 to 500 feet within the range of his headlights. Furthermore, the evidence from witnesses on both sides is that the truck was a dark color, the sides of the truckbed were slatted, and that it would be difficult to see the truck at night—particularly when it was not expected.

Pertinent also is the position of the defendants' truck on the highway. Since it was stopped diagonally across the intersection, neither its front lights nor its rear lights were visible from plaintiff's position to the east. If the truck was otherwise lighted, as to which the

evidence was in dispute, only an amber turn signal on the right front fender faced in plaintiff's direction—and that, according to the testimony, too weak to read by. It is also appropriate to note that a passenger who was riding in a car some 60 yards behind the plaintiff testified he was unable to see the truck until he reached the intersection.

While we still adhere in general to the rule that a motorist must correlate the speed of his vehicle with his ability to stop the same within the range of his vision, exceptions have been engrafted onto the rule. More than once we have said that the color and condition of a truck stopped in a traffic lane late at night is a condition materially affecting its visibility and that the same may qualify the range of vision rule. (*Newman v. Case*, 196 Kan. 689, 413 P. 2d 1013, and cases cited therein.)

The existence of contributory negligence normally is an issue for the jury to determine. When it can be said that reasonable men could not reach differing conclusions from the same evidence, the issue may be decided as a matter of law—but not otherwise. (4 Hatcher's Kansas Digest, [Rev. Ed.] Negligence, §§ 72, 75.) In our view, the evidence fails to disclose negligence on the plaintiff's part as a matter of law, and the trial court did not err in submitting that question to the jury under proper instructions. The jury's finding which exonerated the plaintiff of contributory negligence is within the range of the evidence and may not be disturbed.

This brings us to another point raised by the defendants. They object to the court's instruction setting forth the substance of K. S. A. 8-5,108 (*a*). We shall not quote the instruction here, for it was phrased in substantially the same language we used in setting out the statute. Their principal objection is that the instruction includes provisions of the statute which require warning signals to be placed 100 feet to both front and rear of a stalled truck. Compliance with these requirements, it is argued, could not have been accomplished in time to prevent the accident.

Under the evidence before us, however, we believe no prejudicial error was committed on this score. If, as one of the witnesses testified, the truck had been stalled no longer than 30 seconds before the accident, it might be conceded that no more could have been done to warn plaintiff than to place a signal beside the truck, although the defendants failed to accomplish even this much. However, there was other testimony that the time which elapsed between the

stall and the accident was from two to four minutes. Taking the latter figures, we cannot say an alert driver could not have placed a warning signal 100 feet away. Considering the range of the evidence, we consider the instruction not erroneous.

One final claim of error remains—that the judgment against Mr. Elliott, the driver, cannot stand because of the jury's answer to question 8, heretofore quoted in full. The substance of that answer was this: If a helper in the truck which had followed Elliott's truck to Highway 50 had time to warn traffic, then Mr. Hoffman, Elliott's helper, should have had time to warn traffic also.

This inspired answer was undoubtedly precipitated by testimony given by Mr. Mansell, who rode in the truck which was following Elliott. Mansell said he got out of his truck when it almost stopped, took a flashlight and started over to the stalled vehicle. As he got about to the cab he heard a noise, turned around and saw a car coming, threw his cap in the air, tried to wave his flashlight, and started running to the southwest corner to a farmhouse.

Although Mr. Mansell's efforts to warn the plaintiff were futile, doubtless because they came too late, he did make an attempt. Apparently the jury believed that Mr. Hoffman would have had time to exert himself to similar endeavor. It was the jury's reference to Hoffman which Elliott construes as vindicating his inaction. We reject any such conclusion. The statute places the duty to warn traffic directly on the driver of a disabled truck. He may, we presume, be assisted by others, but the responsibility rests upon him, and a failure to carry it out in a prudent and reasonable fashion carries liability with it. The jury's reference to Mansell's tardiness does not absolve Elliott.

The judgment is affirmed.