No. 45,226

CHESTER H. HILDEBRAND, *Appellee,* v. KURT M. MUELLER, *Appellant.*

(449 P. 2d 587)

*D*pinion filed January 25, 1969.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *Lee Turner* and *Max E. Eberhart,* both of Great Bend, were with him on the briefs for the appellant.

*Terry O'Keefe* and *Jack H. Greene,* both of Wichita, argued the cause, and *Dale Kidwell, George W. Ball* and *Kenneth M. Nohe,* all of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This controversy stems from an automobile collision at an uncontrolled intersection of two township roads.

The collision, which gave rise to the action, occurred on July 27, 1965, at about 7:25 a. m. The scene of the accident was a rural intersection described as a "gravel township intersection." There were no traffic signs.

The intersection was a partially blind intersection for cars approaching from the north and east. There is a slight uphill grade from the north and a slight downhill grade from the east. There was a haystack 164 feet east and 16 feet north and there was a trench silo with 18 inch high weeds 11 feet east and 23 feet north of the northeast corner of the intersection. There was an unobstructed view of 51 feet between the haystack and the silo and there was an unobstructed view of 55 feet between the silo and the intersection. The drivers of vehicles would be unable to see each other if either or both were behind the haystack or silo, otherwise the visibility was unobstructed.

Plaintiff was a 35 year old carpenter and farmer living north of the intersection. He was on his way to work when the collision occurred.

There were no eye witnesses to the collision. Plaintiff recalls loading his tools into his truck and driving toward the city of Stafford but remembers nothing else for several days. He was in a state of shock for two days and unconscious for three or four more days. He stated that his usual speed was about 35 miles per hour. The defendant was mentally incompetent and incapable of giving testimony under oath.

The defendant was approaching the intersection from the east while plaintiff approached from the north. An investigating officer for the highway patrol arrived shortly after the accident. His measurements disclosed that the point of impact was fifteen feet west of the east line and seven feet south of the north line of the intersection.

John Stackley, a reconstruction expert who had been with the City of Wichita Police Department for 35 years and with the traffic department for 22 years, testified for plaintiff.

The witness estimates speed by studying the damage to the vehicles, estimating the force of the impact and studying similar surrounding circumstances. There were no skid marks. He placed the point of impact on plaintiff's truck thirty-seven inches back from the front bumper. He calculated that the plaintiff was traveling at a speed of 35 to 47 miles per hour, and the defendant was traveling at a speed of 54 to 66 miles per hour. It was also his opinion that the plaintiff's vehicle was in the intersection a split second ahead of the defendant, perhaps one foot ahead.

The case was tried to a jury which answered special questions as follows:

"1. Question: Do you find that the plaintiff, Chester H. Hildebrand, was guilty of any negligence which was the proximate cause of the accident? If so, state the act or acts of negligence.

"Answer: No.

"2. Question: Do you find the defendant, Otto Kurt Mueller, was guilty of any negligence which was the proximate cause of the accident? If so, state the act or acts of negligence.

"Answer: Yes—Ans.—Failure to yield the right of way to a vehicle already in intersection.

"3. Question: If you find for the plaintiff, how much do you allow for his:

"a. Injuries .................................... 5,000.00
"b. Pain and suffering .......................... 5,000.00
"c. Past loss of wages .......................... 2,030.00
"d. Future loss of wages ........................ 21,000.00
"e. Damages to his automobile .................. 1,750.00
"f. Past medical bills .......................... 4,836.90"

The trial court directed the entry of judgment on the verdict and findings, and the defendant has appealed.

The appellant first contends that the appellee was guilty of contributory negligence as a matter of law.

In the case of *Cole v. Dirkson,* 202 Kan. 431, 449 P. 2d 584, we discussed the principles of law which control the extent of this court's consideration of the facts in an automobile accident case. It would serve no useful purpose to restate them here.

The jury absolved the appellee of contributory negligence. Although the evidence is scanty and weak, we cannot say that reasonable minds might not differ under the circumstances. The jury may well have believed that appellant's unreasonable speed was the proximate cause. If the appellee entered the intersection one foot ahead of the appellant and traveled only six feet while the appellant was traveling fifteen feet, the appellant must have been going more than twice as fast as the appellee. The jury could well have believed that appellant was traveling at such a rate of speed that he had no time to slow down, swerve or do anything toward yielding to someone in the intersection.

The appellant relies heavily on *Green v. Higbee,* 176 Kan. 596, 272 P. 2d 1084. In the *Green* case we stated at page 610 of the opinion:

"Whether a negligent act, or acts, constitute the legal and efficient cause, or a contributing cause of injury, is ordinarily a jury question. Where, how-

ever, the evidence involved is entirely uncontradicted or the material facts on which a party relies are all admitted a question of law is presented for determination of the court."

We cannot say that in the case before us the facts are all admitted. Also, the weight to be given the testimony of the expert witness was a question for the jury to determine.

If there was merit in appellant's next contention, his argument as to the evidence would have merit.

The defendant contends that the testimony of the expert, John Stackley, was erroneously admitted. The chief complaint seems to be that the witness was not qualified to testify as to the speed and location of the automobiles just before entering the intersection. Appellant recognizes that the qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Howard v. Stoughton,* 199 Kan. 787, 433 P. 2d 567.) However, he states:

". . . Nevertheless, we submit it was an abuse of discretion on the part of the District Court to allow Stackley to testify to the ultimate fact of which vehicle entered the intersection first, particularly when he admitted that at best he was talking about a split second. . . ."

We find no merit in the contention. We must conclude, as we did in *Taylor v. Maxwell,* 197 Kan. 509, 419 P. 2d 822, where we held:

"The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge, and unless the judge excludes the testimony he shall be deemed to have made the findings requisite to its admission." (Syl. 2.)

John Stackley's qualifications as an expert were approved in *McElhaney v. Rouse,* 197 Kan. 136, 415 P. 2d 241.

The appellant next contends that the verdict was excessive. Appellant's chief objection is addressed to the allowance of $21,000 for future loss of wages.

This court has found it impossible to formulate a hard and fast rule on the question of the amount of damages to be allowed in a personal injury action for the simple reason that the determination of the matter necessarily depends upon the facts and circumstances of each particular case. (*Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321.) We must look to the extent and nature of the injuries.

The appellee suffered severe lacerations on his head, twelve ribs were broken, there was a hernia to the diaphragm, his stomach was

forced up into the chest cavity which required an operation to repair and his spleen was ruptured and had to be removed.

The appellee did make a remarkable recovery. He was in the hospital a little over five weeks and returned to work two months after leaving the hospital. However, the testimony was to the effect that he could not do the amount of work he did before the accident. His foreman testified that he found him resting on occasions around three o'clock—something he had not done before. Prior to the accident appellant weighed 260 pounds. He now weighs 190 pounds.

The appellee has a life expectancy of 36 years. His doctor stated that he would have to do less strenuous work than before the accident and gave him a ten percent permanent disability. We cannot agree with appellant's suggestion that—"There was absolutely no foundation, however, for any future loss of wages."

We find no reason to take issue with the amount of the jury's verdict.

The appellant last contends that he was erroneously precluded from any post-trial contact with the jury.

Under the rule of the judicial district where the case was tried, attorneys are prohibited from directly or indirectly contacting a juror. The rule provides that the court may require members of the jury to appear and answer questions propounded by the judge at the request of counsel. Counsel are allowed to propose suggested questions but they are not allowed to question a juror.

The appellant states that he is unable to enumerate the precise nature of any misconduct. It would appear that appellant wanted to go on a fishing expedition without anything definite in mind. The defendant did not attempt to have questions propounded to the jury by the court, the answers to which might indicate misconduct. We think appellant's objection is premature. Before the appellant can obtain relief for misconduct of the jury he must show that substantial rights have been prejudiced. (*Baker v. Western Casualty & Surety Co.*, 196 Kan. 345, 411 P. 2d 711.)

What has been said should not be construed as approval of the rule. It appears to go much further than the latest decision of the American Bar Association Committee on Professional Ethics would indicate as improper. The latest decision, opinion 319, issued August 26, 1967, reads:

"Where the law governing the procedure for an action allows the testimony of a juror by affidavit or otherwise to be used in support of or against a motion for new trial, it is not unethical for a lawyer after trial to talk to or question members of the jury. In states where it is not illegal, a lawyer may communicate with jurors after the trial for the purpose of self-education. The lawyer must not in either case harass, entice, induce or exert improper influence on the juror."

A judge no doubt has power to bring post-verdict interrogations under his control by directing that such interrogations shall be under his supervision. There are, however, two conflicting desiderata which must be weighed in determining how far such questioning shall be permitted and in what manner it shall be done. One is the protection of the defendant's rights to a fair trial before an impartial jury. The other is the danger presented by inquiries that go beyond objective facts, *i. e.*, harassment of jurors, increased incidents of juror tampering and creation of false issues.

Before the rule is criticized by this court we would want to see the effect of its operation in order to determine whether prejudice to the substantial rights of the complaining party resulted.

A careful examination of the record discloses no error which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.

PRICE, C. J. and FONTRON, J., dissent from the first subparagraph of paragraph 3 of the Syllabus and the corresponding portion of the opinion.