No. 46,077

ANTON STAUDINGER, *et al.*, *Appellants*, v. SOONER PIPE & SUPPLY CORPORATION, a Corporation, *et al.*, *Appellees.*

(490 P. 2d 619)

Opinion
filed November 6, 1971.

J. *Eugene Balloun,* of Great Bend, argued the cause, and *Lawrence E. Condit, Lee Turner* and *Thomas C. Kelley,* all of Great Bend, were with him on the brief for the appellants.

*Jerry M. Ward,* of Great Bend, argued the cause, and *Tudor W. Hampton* and *Thomas J. Berscheidt,* both of Great Bend, were with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is an appeal in three consolidated negligence actions brought to recover for tort claims arising from the collision of two vehicles on U. S. Highway 281 north of Hoisington, Kansas. The claims were filed by the driver of one car, Anton Staudinger, and by his wife and daughter. The wife and daughter were passengers. The claims were filed against the driver of the other car, Robert D. Gibb, and his employer, Sooner Pipe & Supply Corporation.

Anton Staudinger, named as appellant, died pending appeal to this court. Agnes Staudinger, his wife, was appointed and is now executrix of his estate. Pursuant to motion the executrix is substituted as appellant in this action on appeal.

In the trial below a jury in answer to special questions found that the defendant, Robert D. Gibb, committed no act of negligence which caused the collision. The jury found that the plaintiff, Anton Staudinger, committed an act of negligence, an improper turn, which caused the collision. The jury further found that neither the wife nor the daughter of Anton Staudinger committed any act of negligence. Defendants were awarded judgment.

Plaintiffs' appeal to this court is based upon claims of abuse of discretion by the trial judge in admitting or restricting evidence and upon errors claimed in the instructions given or refused.

Although plaintiffs do not claim the jury's answers to special questions were contrary to the evidence, a brief summary of the facts surrounding the collision of the two vehicles will be helpful.

The collision occurred on U. S. Highway 281 a few feet north of an intersection with a county road referred to as Susank Road. Both cars were traveling on U. S. Highway 281. The defendant Gibb was proceeding north in the east lane of traffic. The plaintiff

Staudinger was proceeding south in the west lane of traffic. The Staudinger family lived east of this intersection along the Susank County Road. The Staudinger vehicle turned across the center lane of traffic to go east at the intersection. The front ends of both cars were badly damaged and injuries resulted. The point of impact appeared to be east of the center line of U. S. Highway 281 and north of the north line of the county road in the lane of traffic properly occupied by the Gibb vehicle as it proceeded north. The Staudingers testified they did not see the lights of the oncoming Gibb vehicle and they had started to turn left when the collision occurred. A Kansas Highway Patrol trooper, who arrived at the scene shortly after the accident, testified that he determined the accident occurred at 9:18 p. m. It was dark. He had taken pictures and measurements at the scene. He testified the Gibb vehicle left thirty-eight feet of skid marks on the highway before impact. He further testified the skid marks were straight down the highway, in the proper lane, and he was of the opinion the Gibb vehicle was under control prior to impact.

Other facts and testimony will be developed as we examine the points urged on appeal.

Appellants' first points are directed to the restrictions which the court imposed on the testimony of the witness Lt. Stackley of the Wichita Police Department. Lt. Stackley was eventually qualified at the trial as an expert in the area of accident reconstruction. After testifying to his education, experience and qualifications in this area, he testified to physical facts observed in traffic reports and pictures taken at the scene and on the basis of those facts calculated the speed of the Gibb car. In Lt. Stackley's opinion the minimum range of speed of the car prior to brake application was sixty-four miles per hour. After this opinion testimony was given the court recessed the jury and held an in-chambers hearing on the sufficiency of foundation and qualification of the witness for such testimony. The testimony of Lt. Stackley was based largely upon the police report of the accident showing the footage and direction of travel of the two cars both before and after the impact and pictures of the vehicles taken after the collision. He was not present on the scene before or after the accident. The court was concerned largely with Lt. Stackley's lack of knowledge of the texture of the road surface at the time of the accident. Lt. Stackley calculated speed on various ranges of the coefficient of friction possible and arrived at vary-

ing speeds. The exact nature of a road surface determines the coefficient of friction which should be used in determining the speed. The accident occurred June 23, 1964, and Lt. Stackley based his calculations upon the condition of the surface of this road when he viewed it some three and a half years after the accident.

Further testimony concerning the road surface was obtained by plaintiffs from another witness. The witness testified that no resurfacing had occurred on this road during the period and the only change in condition was from "traffic polishing." Thereupon .Lt. Stackley was permitted to testify that it was his opinion the upper range of speed of the Gibb vehicle was 71.3 miles per hour.

The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822; *Hildebrand v. Mueller*, 202 Kan. 506, 449 P. 2d 587.)

The trial judge may require a witness be first examined concerning the data upon which the opinion or inference will be founded before allowing him to testify in terms of opinion or inference. (K. S. A. 60-457.) When an expert witness is not or cannot be sufficiently advised of relevant and material matters prerequisite to his testimony on the subject the trial judge may reject the testimony. (K. S. A. 60-419.)

In this case the trial court required further examination as to the possible changes in the road surface between 1963 and 1968. This was within the discretion of the trial court as indicated by the statutes and our case law. The testimony of the maximum range of speed was later admitted and no prejudicial error resulted from requiring further qualification and foundation facts.

The next point presented for error was the refusal of the trial court to permit Lt. Stackley to testify as an expert on the effects of alcohol on judgment, coordination and reaction time of drivers.

Mr. Stackley was a lieutenant in the Wichita Police Department. He had qualified as an expert in the field of accident reconstruction. Background and experience in the field of internal medicine was entirely lacking from the previous qualifications he had given. Unless we can say that experience gained in a police department in accident investigation and in testing percentages of alcohol in the blood are sufficient to endow a person with medical expertise on the effects of alcohol on the human body the trial court's ruling must stand. We do not believe after reading the qualifications of

Lt. Stackley which appear in this record that the trial court abused its discretion in excluding his testimony on this point.

The plaintiffs alleged that defendant Gibb was intoxicated when the accident occurred and that his intoxication was a proximate cause of the accident. The trooper testified the Gibb vehicle was under control and in its proper lane prior to impact.

There was testimony that when Mr. Gibb quit work that evening at 5 o'clock p. m., he and a customer of the company went to the V. F. W. Club at Great Bend, Kansas. Gibb had a mixed drink at this club with an alcoholic content. He ate a sandwich and some potato chips. Thereafter the two men went to another private club where they picked up a girlfriend of Gibb, had another drink and then went to the girlfriend's house to arrange for another girl. Gibb had a third drink at the house. At 8:30 they left Great Bend and enroute to Russell, Kansas, the collision occurred. The time of the accident was set at 9:18 p. m.

This leads us to appellants' next point of error. Dr. Reiff Brown, a physician specializing in orthopedic surgery, was called as an expert witness. He had taken pharmacology classes in medical school as to the effects of alcohol in the body systems. He testified that alcohol was a depressant that affects the reflexes of the brain, spinal cord and the nerves. A person while under the influence of alcohol acts as though he is stimulated because voluntary inhibitions are depressed. It is a toxide and affects the brain more than other organs. It is broken down by the liver and either used as food or eliminated by the body as waste.

The witness was not permitted by the trial court to answer the abstract question, "What effect does it (alcohol) have on judgment, reaction time and coordination?" The objection posed to the question was lack of foundation in that it solicited no medical knowledge based upon the facts in this case. The answer to such an abstract question would not have been related to any facts of the case. If given it would be lacking in probative value without further hypothesis. The question as posed presupposes no stated amount of alcohol and no stated lapse of time between ingestion and effect. The question was one which elicited an opinion of an expert and which is contemplated by the following statutes relating to expert testimony:

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds

are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." (K. S. A. 60-456 [*b*].)

"The judge may require that a witness before testifying in terms of opinion or inference be first examined concerning the data upon which the opinion or inference is founded." (K. S. A. 60-457.)

The province of an expert witness is to aid a jury in the interpretation of technical facts or to assist in understanding the material in evidence and not to state simple conclusions based upon facts which could be, but which have not been placed in evidence. (*Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, 437 P. 2d 219.)

Questions propounded to experts should not require answers involving matters of conjecture or speculation. (2 Jones on Evidence, § 417, p. 788 [Fifth Edition].) The trial court properly required a more specific factual background.

Thereafter appellants attempted to pose an acceptable hypothetical question and in each case the court sustained an objection. The first hypothetical question asked was:

"Dr. Brown, I want you to assume that an individual, a man, had five drinks of liquor over a four-hour period of time, from approximately five o'clock to nine o'clock in the afternoon, and that these drinks were from a jigger to a jigger and a half of liquor, in mixed drinks; that he had nothing to eat during that period of time, except possibly a few potato chips. Do you have an opinion as to whether or not liquor, or alcohol in that instance would have an effect upon that person's judgment, coordination, and reflexes?"

The second hypothetical question asked was essentially the same as the first except the number of drinks was reduced to three.

The third and fourth hypothetical questions posed were essentially the same as the second except the individual was described as being the approximate age and weight of Mr. Gibb. The actual age and weight of Mr. Gibb was not available in the evidence.

An offer was made by the court to allow counsel sufficient time to prepare a hypothetical question in writing. Counsel refused this offer. The court then ruled:

"It is the opinion and determination of the court that there was no single hypothetical question posed to the doctor that was a proper hypothetical question; lacking in scope and also lacking in accuracy, and to allow him to answer any one of the hypothetical questions posed would be wrong, would be misleading, and would be prejudicial to the defendants."

In *Howard v. Stoughton,* 199 Kan. 787, 433 P. 2d 567, it was said:

"The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Taylor v. Maxwell,* 197 Kan. 509, 419 P. 2d 822.) There is no requirement that questions be hypothetical in form when an expert witness is presented the facts in some other acceptable manner. (K. S. A. 60-458; Gard, Kansas Code of Civil Procedure, § 458.) He may render an opinion based on facts or data within his personal knowledge or observation, or made known to him at the hearing. (K. S. A. 60-456 [*b*]; *Van Welden v. Ramsay's, Inc.,* 199 Kan. 417, 430 P. 2d 298.) In this state expert testimony relating to automobile accidents has been held admissible in the discretion of the trial court. (*McElhaney v. Rouse,* 197 Kan. 136, 144, 415 P. 2d 241, and cases cited therein. Also, see, *Campbell v. Clark,* 283 F. 2d 766 [10th Cir. 1960].)" (p. 790.)

When an expert witness is not testifying from personal knowledge and examination of the subject of inquiry the trial court in its discretion can require questions in hypothetical form. (K. S. A. 60-458.)

In Jones on Evidence it is stated:

"A hypothetical question should be so framed as to state the facts which the interrogating party claims have been proved and for which there is support in the evidence. If there is no testimony in the case tending to prove the facts which are assumed by the hypothetical question, such question is improper. If the facts assumed in the interrogatory are wholly irrelevant to the issue, the question should be excluded. And it has been held that the question must always include and assume all material facts which are undisputed. In short, there must be in the evidence a sufficient fact predicate to support a hypothetical question and the answer of the expert thereto.

"It is error to allow an expert to answer a hypothetical question which excludes from his consideration facts which have already been proved by the testimony upon which the question is based, a consideration of such facts being essential to the formation of an intelligent opinion concerning the matter. The court should reject questions which unfairly select part of the established facts or which omit material parts. A hypothetical question cannot be based upon testimony given by the witness himself, where it is merely assumed to be true." (2 Jones on Evidence, § 416, p. 782 [Fifth Edition].)

We have examined cases where expert testimony has been solicited to establish a degree of intoxication on the part of an individual who has previously consumed alcohol. (See *Weaver v. Lovell,* 128 Ill. App. 2d 338, 262 N. E. 2d 113.) In such cases certain elemental facts appear necessary to a hypothetical question on intoxication in the absence of blood tests and breath analysis. Where, as here, there is no evidence of eyewitnesses concerning

impaired coordination or lack of control on the part of a driver, a trial court is required to exercise judicial restraint and discretion in approving the hypothetical questions asked for the purpose of inferring negligent operation of a vehicle. The question in such cases should include and assume all material facts which are necessary to an expert opinion on the subject of inquiry. In *Weaver v. Lovell*, supra, various factors were considered as elemental to a proper hypothetical question as to intoxication. Blood alcohol is decreased by oxidation through bodily processes. The weight and age of the individual, the amount of food eaten before and during the period in question, the number of ounces of alcoholic beverage, the strength of the particular drink consumed (*i. e.* 80, 86 or 100 proof) and the approximate time or times the individual ingested the drinks in relation to the time of the accident are important in answering such a question with any degree of reasonable certainty.

We do not say that all such elemental facts must be incorporated in every such hypothetical question posed on the subject of intoxication. Judicial discretion to determine the sufficiency of the hypothesis in the first instance is lodged in the trial court and on appeal is lodged in this court.

None of the hypothetical questions in the present case included the age or weight of the individual, the sandwich eaten by him during the course of the evening, the number of ounces, the strength of the alcoholic beverages consumed or the approximate time each drink was consumed in relation to the collision. These elemental factors having been omitted from the hypothetical question, we cannot say that the trial court erred in holding the questions were so lacking in accuracy and scope that any answer given in response thereto would lack the requisite degree of reasonable certainty.

Appellants' next point of error is in restricting the cross examination of Gibb and of his girlfriend, Patsy Sluter Walker. The trial court restricted the questioning of these two witnesses when appellants attempted to bring out adulterous behavior and immoral conduct for the stated purpose of affecting their credibility as witnesses.

As affecting the credibility of a witness K. S. A. 60-422 provides that evidence of traits of character other than honesty or veracity or their opposites, shall be inadmissible.

We therefore reject the conclusions reached by the appellants on

this point. Testimony as to adulterous or immoral conduct should not be admitted solely to affect the credibility of witnesses.

Appellants claim error in the failure of the court to give instructions requested by them to negate negligence of the parent being imputed to the child and negligence of the driver being imputed to the passenger. The trial court refused to give such instructions because the case was submitted to the jury on special questions. There was nothing said to the jury about imputation of negligence of a driver to a passenger. The special questions were presented to the jury and answered as follows:

"No. 1. What act, or acts of negligence, if any, were committed by the defendant, Robert D. Gibb, which caused the collision and ensuing injuries?

"ANSWER: None.

"No. 2. What act, or acts of negligence, if any, were committed by the plaintiff, Anton Staudinger, which caused the collision and ensuing injuries?

"ANSWER: Improper turn.

"No. 3. What act, or acts of negligence, if any, were committed by the plaintiff, Agnes Staudinger, which caused the collision and ensuing injuries?

"ANSWER: None.

"No. 4. What act, or acts of negligence, if any, were committed by the plaintiff, Rosalie Staudinger, which caused the collision and ensuing injuries?

"ANSWER: None.

"No. 5. If you find that defendant Robert D. Gibb committed an act or acts of negligence which caused the collision and ensuing injuries, and if you also find that the plaintiff, Anton Staudinger, did not commit an act or acts of negligence which caused the collision and ensuing injuries, then write below the amount of money that you feel would reasonably compensate him for his injuries and car loss.

"ANSWER: _____

"No. 6. If you find that defendant Robert D. Gibb committed an act or acts of negligence which caused the collision and ensuing injuries, and if you also find that the plaintiff, Agnes Staudinger, did not commit an act or acts of negligence which caused the collision and ensuing injuries, then write below the amount of money that you feel would reasonably compensate her for her injuries.

"ANSWER: _____

"No. 7. If you find that defendant Robert D. Gibb committed an act or acts of negligence which caused the collision and ensuing injuries, and if you also find that the plaintiff, Rosalie Staudinger, did not commit an act or acts of negligence which caused the collision and ensuing injuries, then write below the amount of money that you feel would reasonably compensate her for her injuries.

"ANSWER: _____."

It should be noted that three separate claims were filed in this consolidated case arising from the collision, one by Anton Staudinger, one by his wife and one by his daughter. The three cases were consolidated for trial. Evidence was introduced to establish the negligence of Anton Staudinger. The negligence of the parent, Anton Staudinger, cannot be charged to the child and such negligence would not relieve the defendant of any liability he might have to the child. (*Becker v. Rupp*, 187 Kan. 104, 353 P. 2d 961; PIK 4.04.) Any negligence on the part of the driver of a vehicle is not chargeable to a passenger and will not bar recovery for an injury to a passenger received as a direct result of negligence of the defendant. (*Kendrick v. Atchison, T. & S. F. Rld. Co.*, 182 Kan. 249, 320 P. 2d 1061; PIK 8.90.)

As applied to this case we believe the instructions on imputed negligence should have been given even though the case was submitted to the jury on special questions.

The need for such instructions can best be illustrated by pointing out the dilemma the jury and court would have faced if the jury had found both Robert Gibb and Anton Staudinger negligent in causing the injuries. In such case neither special question No. 6 nor special question No. 7 prefaced an allowance for injuries of the wife or the daughter upon findings of negligence encompassing both drivers. Faced with this situation and in the absence of instructions on imputed negligence the jury might well have disallowed damages to the wife and daughter on the assumption that the negligence of their driver prevented recovery. This is especially true in this case where the cases were consolidated for trial and where under Instruction No. 3 the jury was advised:

"The plaintiffs have the burden of proving that defendant Robert D. Gibb committed an act or acts of negligence which resulted in the collision and injuries of which each complains.

"The defendants have the burden of proving that any plaintiff committed an act or acts of negligence which resulted in the collision and ensuing injuries."

Such instruction infers that the burden of proof has been met by the defendants on proof that *any plaintiff* committed acts of negligence which resulted in the collision.

However, considering the answers of the jury to the special questions we do not believe reversible error was committed. The jury found the defendant was not negligent. (Answer to Special Question No. 1.) Without a finding of negligence on the part of the

defendant the jury could not and would not reach the issue of imputed or contributory negligence on the part of the plaintiff wife or daughter.

A case on appeal will not generally be reversed on exceptions to instructions which do not relate to the issue upon which the cause was determined. (*Pittman Co. v. Hayes,* 98 Kan. 273, Syl. ¶ 2, 157 Pac. 1193.)

In *Worden v. Tri-State Insurance Company,* (10th CA 1965) 347 F. 2d 336, the rule is stated that an error in instructing a jury on the issue of contributory negligence is harmless and not prejudicial to plaintiff when there is a jury finding that defendant was not guilty of negligence.

In *Behler v. Wichita Transportation Co.,* 136 Kan. 591, 16 P. 2d 503, and in *Swope v. City of Wichita,* 141 Kan. 388, 41 P. 2d 987, the rule has been applied where the special findings of the jury acquit the defendant of the negligence charged in the petition.

We conclude that it was error to refuse plaintiffs' requested instructions on imputed negligence but that such was harmless and not prejudicial to plaintiffs in view of the jury finding that defendant was not guilty of negligence.

Although we have examined the balance of the ten points urged on appeal, we do not believe further discussion is necessary. The points have been examined and it has not been made to appear that reversible error was committed in admitting or restricting evidence, in giving or refusing instructions or in failing to clarify the special questions. (See K. S. A. 60-261 and K. S. A. 60-2105.)

The judgment is affirmed.

FONTRON, J., dissents.