No. 47,016

EARL HUBBARD, et al., and CLAYDEAN HAYS, et al., and WARREN CROSS, *Appellees,* v. ESTATE OF HAVLIK and CITY OF PRATT, KANSAS, *Appellants.*

(518 P. 2d 352)

Opinion filed January 26, 1974.

*Edward F. Arn,* of Arn, Mullins, Unruh, & Kuhn, of Wichita, argued the cause, and was on the brief for the appellant, Estate of Michael Havlik.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner,* of the same firm and *Don E. Brown,* of Pratt, were with him on the brief for the appellant, City of Pratt.

*Patrick F. Kelly,* of Render, Kamas and Kelly, of Wichita, argued the cause, and *John V. Black,* of Pratt, and *Harold Herd,* of Coldwater, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from a consolidated trial involving three actions. Two of the actions for wrongful death were brought by the parents of Michael Hubbard and the parents of Patricia Hays (plaintiffs-appellees) against the estate of Michael Havlik (defendant-appellant) and the City of Pratt, Kansas (defendant-appellant). The other action was on behalf of Warren Cross (plaintiff-appellee), a minor, against the estate of Havlik. All three actions arise out of a one vehicle accident which occurred in the City of Pratt, Kansas.

The tragic event prompting this litigation occurred on February 9, 1970, at approximately 9:50 p. m. near the intersection of Holly and Oak Streets. A 1966 Chevrolet pickup truck being driven by Stanley Michael Havlik crashed into a tree situated approximately one foot off the pavement, instantly killing Havlik, Michael Hubbard, fatally injuring Patty Hays, and seriously injuring Warren Cross. It was stipulated that Hubbard, Hays and Cross were guests in the Havlik vehicle. The parties further stipulated that analysis of a blood sample taken from Havlik about an hour after the accident disclosed the alcohol in his blood was 0.114% by weight.

The facts disclosed by the evidence presented at the trial show that Havlik, Hubbard, and Cross were acquaintances and attended Pratt Community Junior College. On February 9, Pratt Juco was to have a basketball game at 8:00 p. m. with Butler County Community Junior College. The boys planned to attend the game together. About 4:30 or 5:00 p. m. the trio went to Charlie's Pizza, a local establishment, to drink some beer. According to Cross, the sole survivor of the accident, they each consumed about seven or eight draught beers. Other testimony equated the above amount with one and one-half bottles of beer. They departed about 7:00 or 7:30 p. m., and obtained a pint of 190 proof grain alcohol through another individual because they were minors. They then proceeded to the apartment shared by Cross and Hubbard where they concocted a gallon of "purple passion", which was a mixture of the 190 proof alcohol and fruit juices. They consumed about half of the beverage before it was time to leave for the basketball game.

They rode to the game in Havlik's pickup truck, taking remaining portion of the "purple passion" with them. Cross testified that on the way to the game Havlik "hot rodded" the vehicle by popping

the clutch, making jackrabbit starts, and spinning the wheels, though he was not speeding. According to Cross, who had only ridden with Havlik on a few occasions, Havlik had the reputation among other students of ". . . reckless type driving."

At the game, the trio sat in front of Marge Lesley, recreational supervisor to Pratt Juco, who testified on behalf of the defendants. Mrs. Lesley was acquainted with the boys through her contacts at the Juco. According to her, the boys were enjoying the game like all the other students, but they talked a little louder than others and in a somewhat slurred manner, frequently bragging about the beer and "purple passion" they had consumed. She observed their equilibrium seemed normal. During the game's half time the remaining portion of the "purple passion" was consumed with the help of a few other boys. After the half time, Patty Hays, a high school senior, began sitting with Michael Hubbard.

Following the game Marge Lesley talked with Hubbard and Patty in the gymnasium lobby as they were filing out to the parking lot. The court ruled the conversation admissible as to the City of Pratt, as possibly showing contributory negligence against Hubbard and Hays, but ruled it inadmissible with respect to the Havlik estate because Havlik was not present at the conversation. The jury was instructed on this matter before Lesley was permitted to testify. Her testimony was as follows:

". . . I did not know who Patty Hays was but he introduced me to her and I said, 'How are you going to get home', and they said with Havlik and Cross. I said, 'Alright, but you have got no business getting in that car with those kids. Would you like to come and ride with me.' They said no, they would go ahead and go with them. Now I had went on out and that is my conversation with them.

"I told them I was afraid for them because I thought Mike Havlik was drunk. I said that Mike Havlik was noted to be a reckless, careless, fast driver and that practically everybody in college knew that he was reckless, that he drove fast and that he was not safe to be in a car with. Mike Hubbard said, 'We are not afraid. We will go ahead and go with them.' They went outside and got in the car with Mike Havlik."

While Hubbard and Hays were talking to Marge Lesley in the gymnasium lobby, Havlik and Cross had gotten into the pickup, thinking Hubbard would be leaving with Patty. They proceeded to exit from the parking lot when Hubbard and Patty knocked on the door. They wanted to go with Cross and Havlik to The Chapeaux, another local hangout. So all four piled into the single seat of the pickup truck.

Marge Lesley testified she was in the second car behind the Havlik vehicle, and that she saw it accelerate rapidly to the north, though she could not estimate the speed.

Nothing else is known concerning the vehicle from the time it left the Juco parking lot until it crashed into the tree at the Holly and Oak Street intersection. Warren Cross is unable to recall anything after Hubbard and Hays joined them in the pickup.

The evidence indicated that the route most likely taken by the Havlik vehicle was north on State Highway 61 to North Street; west on North Street which terminates at the Rock Island railroad tracks and the intersection of Stout Street (the cemetery road), then south on Stout to Holly, then west to the point of collision. Holly Street is a paved road in the northern part of Pratt. At its most distant point west Holly turns abruptly into Oak Street which runs south. The tree crashed into by the Havlik vehicle was a large elm, appearing from the exhibits to be two or three feet in diameter, and was situated about a foot off the pavement west of the Holly and Oak Street curve. From a distance, looking west on Holly Street, the exhibits made it appear as if the tree in question is located in the center of Holly Street. A little to the southwest of the tree there is a small white building, and to the west are four or five sets of railroad tracks. The tree is on the railroad right-of-way. The north side of Holly is curbed up to the railroad right-of-way. The curbing does not continue around the outside portion of the Holly and Oak curve, which includes the area in which the tree is located.

Two officers who arrived on the accident scene moments after it occurred testified at the trial. Raymond L. McGuire testified he has been with the Pratt Police Department for six and a half years, and during that time has investigated 600 to 700 accidents. According to measurements taken by him Holly Street is approximately 38 feet wide while the curve into Oak Street narrows to 28 feet in width. Two blocks east of the curve on Holly is a drainage dip—a slight depression across the roadway to allow surface water to drain off. The street runs on a slight upgrade from the drainage dip to the curve. The Holly and Oak intersection is unlighted, and there are no signs the entire length of Holly Street indicating the speed limit or warning that the street narrows and curves. He stated that from a distance, and except for the tree, the road has the appearance of continuing beyond the intersection.

McGuire testified that he has driven down Holly Street and

turned south on Oak Street at night on several occasions. He stated that a half block east of the intersection, or about 175 feet, while driving with his low beam headlights on he has a clear view of the curve, tree and building behind it. Based upon the average individual's reaction time of three-fourths of a second, a car traveling 30 m. p. h., the speed limit for the vicinity of the Holly and Oak corner, should be stopped in roughly 100 feet. According to McGuire, if a vehicle was one-half block from the Holly and Oak corner, approximately 175 feet, the driver should be able to see the approaching corner, react and stop his vehicle, and still be 75 feet from the corner.

McGuire further testified that he had investigated about 75 to 100 serious accidents where the speed of the vehicle or vehicles was known and he had observed the vehicular damage. He testified that in determining the speed of the Havlik vehicle the damage which was significant was the division of the body frame and the fact the motor and steering post column were driven back almost into the cab. Taking these facts into consideration the witness expressed the opinion that the vehicle's minimum speed at impact was 55 m.p.h. The appellant, Havlik's estate, interposed objection to the admission of McGuire's opinion into evidence.

On cross-examination both the appellant Havlik and the City of Pratt showed that ten days previous to the trial McGuire, in a deposition, stated he had no opinion of how fast the Havlik vehicle was traveling. At the time of the deposition the following questions and answers occurred between Havlik's attorney and McGuire:

Q. "Were you able to figure out how fast that pickup was going?"
A. "No, Sir."

\* \* \* \*

"Q. Well, it's pretty much of a guess.
"A. This is correct. There may be ways of figuring it out but I don't know what it is."

McGuire explained that he was now able to judge the vehicle's speed because since the deposition he had reviewed previous accidents involving known speeds.

Officer McGuire could find no Pratt Police Department record of any accident at the Holly and Oak corner in the eight years preceding the Havlik accident.

Captain Charles Blasi testified he has been employed by the Pratt Police Department for twenty-one years. During that time he has investigated in excess of 2,000 accidents, many of which

were head-on collisions of vehicles where speeds were known at the time of impact. According to his check of the Pratt records and his memory there has never been an accident at the corner of Holly and Oak. According to the witness one could clearly see the curve and tree a block away with the automobile headlights on dim.

After considering the damages to the Havlik vehicle, Captain Blasi testified, over objection from Havlik's estate, that the minimum speed the vehicle could have been traveling was 60 miles per hour. On cross-examination, the attorney for Havlik's estate elicited the following testimony from Blasi concerning his opinion as to the vehicle's speed.

"Q. In attempting to review a wrecked vehicle after it has an accident, and by looking at the damage there is a large degree of speculation and guess in trying to look at the damage and say how fast the vehicle was going before it happened. Wouldn't you concede there is a great deal of guess and speculation?

"A. Yes, it can only be an opinion.

"Q. Well, isn't it guess and speculation?

"A. Yes, partly."

Rev. Walter A. Hargraves, pastor of the First Christian Church in Pratt, Kansas, testified for the plaintiffs. About two nights following the accident he drove down Holly about three blocks approaching the Holly and Oak intersection with his vehicle's headlights on trying to visualize the accident. The street light on Main Street, a north-south street about four blocks west across the railroad tracks, made it appear to him that Holly would continue west without obstruction.

Plaintiffs called Mr. Paul Graves as an expert witness to testify concerning Holly Street and the intersection. He is employed by the City of Wichita as the City traffic engineer and supervises the Traffic Engineering Division of the city which is responsible for the design, redesign, markings, signalization of the street system, stop signs, traffic signals and street lighting. He works with the planning department on planning streets. A major consideration in his work is road safety. He has a Bachelor of Science degree in civil engineering, and has been employed in work similar to his present for about 29 years. At plaintiff's request he viewed the Holly and Oak Street intersection in the daytime three weeks before the trial. In testifying as to whether the City of Pratt maintained reasonable standards of road safety at the Holly and Oak

Street intersection the witness testified, over objection by the City of Pratt, as follows:

"A. My opinion is that due to the roadway alignment, the differential, the narrowing of the roadway as it passes through the curved section and the fact that the large tree, which is an obstruction, is adjacent to this narrowed section and likewise within inches to it, the fact that there is an absence of a north curbline along the curved portion of Holly to Oak Street, and the fact that there is an absence of any advance warning sign or devices around the hazardous location of this tree, an immovable object, as well as, I think, the road is not marked properly and is hazardous.

"At the time I visited the location there were no devices on that street."

On cross-examination by the City of Pratt the witness stated that he did not believe any street could be designed to solve the problems of a law breaking driver, including warning devices, engineering, etc. Generally, his purpose is to design a street with warning signs necessary to protect drivers operating within the traffic rules and regulations.

Three doctors testified concerning the significance of Havlik's 0.114% blood alcohol content. They all agreed the effect that amount of alcohol would have upon a person depends upon the individual. Dr. J. Robert Weaver, a practicing physician in Wichita, testified the effects should be those of mild acceleration, an increase in the conditioned reflexes, and possibly a slight decrease in the central inhibitions. He stated the given amount should not influence a driver's ability to drive. Dr. Robert K. Purves, a general surgeon from Wichita, basically concurred with Dr. Weaver, but stated he would expect a person with a blood alcohol count of 0.114% to be mildly exhilarated. Dr. William G. Eckert, a Wichita pathologist, testified in his opinion—assuming an individual eighteen or nineteen years of age, weighing 195 pounds, having a blood alcohol level of 0.114% by weight—such individual would be under the influence. On cross-examination he agreed all people would react differently and that his opinion was subjective.

At the time of the accident a person was presumed under the influence of alcohol if the blood alcohol content was 0.15% or greater. (K. S. A. 8-1005.) By legislative amendment the presumption is invoked at 0.10% presently.

It was stipulated the funeral and incidental expenses with respect to Michael Hubbard were $916.67, that the incidental, medical and funeral expenses with respect to Patricia Hays were $1,856.90; that the medical expenses with respect to Warren Cross were $2,387.87.

The case was tried to a jury and during its deliberations, before going to lunch, on November 8, 1971, the foreman gave the bailiff a note for delivery to the court. The handwritten note signed by the foreman read:

"item No. 26 on Jury instruction.

"We the Jury understand that both the City of Pratt & Havliks Estate are to be held responsible for the amount set Forth. and both are assed [assessed] the Full amount."

Instruction No. 26 given to the jury read:

"If from the evidence you find that decedent Havlik's conduct was wanton and the defendant City of Pratt was guilty of negligence which was concurrent to the other, the degree of fault or culpability of each is immaterial, and each is liable for the entire damage."

When the trial judge was given the note he had the attorneys summoned to assemble at 2:00 o'clock to consider the matter.

After the jury returned from lunch they deliberated for 30 minutes and had reached a verdict. In reply to the bailiff's question the jury said they did not need the note answered.

When the attorneys for the various parties assembled in court to discuss the matter, the plaintiffs were of the opinion that the note was not a question but a statement of fact, and that nothing should be done about it. The Estate of Havlik merely observed that it appeared the jury had written their own form of verdict. The City of Pratt's position was that the note indicated the jury misconstrued the instruction, and that the jury should be re-instructed.

After the foregoing discussion the court without answering the note or giving further instructions decided to accept the verdict from the jury. The jury returned a verdict on the forms provided by the court, reciting:

"We, the Jury, impaneled and sworn in the above entitled case, do upon our oath find in favor of the plaintiff Hays and against both defendants, Estate of Havlik and City of Pratt, Kans. in the amount of $12,500 from Havlik Estate $12,500 from City of Pratt."

An identical verdict was returned for the Hubbard plaintiffs except the amounts stated were $12,000 from each defendant. Warren Cross was awarded $5,500 against the Havlik estate.

Special questions submitted were answered by the jury as follows:

"I.

"Was Michael Havlik guilty of 'gross and wanton' negligence, as that term is defined by the Court's instructions?

"ANSWER: Yes.

"II.

"If you have answered question No. I in the affirmative, then state the specific acts which you find to have constituted 'gross and wanton' negligence on the part of Michael Havlik?

"ANSWER:

"1. In excess of speed limit.

"2. Not driving with due regard.

"III.

"Were the following occupants of the pick-up truck guilty of such gross and wanton negligence which contributed to the accident?

"(A) Michael Hubbard.
"ANSWER: No.

"(B) Warren Cross.
"ANSWER: No.

"(C) Patty Hays.
"ANSWER: No.

"IV.

"Does the jury find that there was any defective condition existing on the Pratt City street known as Holly Street at the time of the accident on February 9, 1970, which was a proximate cause of the accident?

"ANSWER: Yes."

After the usual post-trial motions were filed, heard and overruled, appeal was duly perfected to this court by the Estate of Havlik and the City of Pratt.

The trial court entered judgment on the verdicts just as they were written. That is, $12,000 against the City of Pratt and $12,000 against the Estate of Havlik for the plaintiff Hubbard; $12,500 against the City of Pratt and $12,500 against the Estate of Havlik for the plaintiff Hays; and $5,500 against the Estate of Havlik for the plaintiff Cross.

The trial court, after hearing the City of Pratt's motion for judgment notwithstanding the verdict, commented that the jury was trying to be fair and did not want to load both sides with the full amount of the verdict so they gave each half liability. The trial court further indicated that was the way he construed it, not a full verdict, but each half.

The appellant City of Pratt contends the trial court erred in overruling its post-trial motions since the verdicts returned by the jury are irreparably ambiguous.

It is argued by the city that the jury, in view of instruction No. 26 concerning which the jury sent a note to the court, indicated that it understood both the City of Pratt and the Havlik estate were to be held responsible for the amount set forth. If the jury did

as their note said and attempted to assess "the full amount" against both defendants, then the "full amount" would be $12,000 for Hubbard and $12,500 for Hays, each defendant being assessed that amount on the altered verdict forms.

The appellees charge .the foregoing argument is pure sophistry. The appellees contend the verdicts clearly show the jury's intent:

". . . In the verdict for the Hays it specifies damages in the total amount of $25,000, and apportions the total among the defendants in equal amounts; the same is done in the verdict for the Hubbards. The verdicts are complete without the attempted apportionment—omitting the names of the defendants, the verdicts read: We the jury . . . find in favor of the plaintiffs and against the defendants . . . in the (total) amount of $25,000 (or $24,000 in the Hubbard verdict). . . ."

It is argued the verdicts so read are complete in themselves and set forth the amount that the defendants should pay the plaintiffs —that the jury intended verdicts in the total amount of $25,000 and $24,000 against the defendants in both cases.

It is well settled that in actions for damages against two or more tort-feasors the jury has no authority to apportion the damages among the defendants, in the absence of a statute specifically authorizing such apportionment, and this for the reason that if defendants are found guilty of negligence which produced the injury, the matter of the degree of negligence as between the defendants is so uncertain as not to form a proper basis for division of damages. (*Hall v. Kansas City*, 112 Kan. 752, 212 Pac. 875.)

In 52 Am. Jur. Torts, § 124 it is said:

". . . Indeed, the apportionment in the verdict has been regarded an essential part thereof, which cannot be taken as surplusage, so that a judgment may not be rendered thereon against the defendants jointly. *The numerical weight of authority, however, is to the contrary, and the trial court is held entitled to treat all the matter after the finding of joint liability as surplusage.* Similarly, *where a several judgment is rendered against each defendant upon such a verdict, it may be corrected upon direction of the appellate court.* . . ." (Emphasis added.)

The appellees take the position, based upon the above citation, that the part of the verdict which apportions the damages among the defendants equally is surplusage and is subject to correction on appeal. They argue no objection to the form of the verdicts returned was made by either defendant at the trial, although the trial court stated that it afforded an opportunity to all parties to raise questions or request clarification concerning the unusual form of the verdict.

In making the foregoing argument the appellees are compelled to admit, as they do in their brief, that the irregular verdicts were not in accord with instruction No. 26. In its note to the court the jury indicated that it understood the instruction. It should be noted instruction No. 26 was attacked by the appellants in the trial court and successfully resisted by the appellees. Under the circumstances the appellees also were under an obligation to object to the form of the verdicts when given an opportunity to do so by the trial court.

Taking all of the facts and circumstances as presented by the record herein into consideration, the posture of this case is such that the irregularity in the verdict cannot be cured by any attempt to apply the rules heretofore stated in striking surplusage from the verdict. At best, the court's decision on the point would result in nothing more than a speculative determination as to what the jury intended. Under these circumstances the verdict cannot stand.

The appellant Estate of Havlik contends the trial court erred in accepting the jury's general verdict, when the jury's special findings were contrary thereto and inconsistent therewith. This point of argument concerns whether the specific findings of the jury absolved Michael Havlik (appellant Estate of Havlik) from any gross and wanton negligence.

The well established rule in Kansas is that it is the duty of the court to harmonize a jury's answer to special questions with the general verdict, if and when that can be properly accomplished. Here, however, it is argued the jury in response to a proper, simple and singular question, found that defendant Havlik did nothing more than (a) exceed the 30 mph speed limit, and (b) drove without due regard. Hence, the simple question before the trial court was whether such acts constitute anything more than ordinary negligence as a matter of law.

It has been held that while speed alone is not sufficient to establish gross and wanton negligence, it could properly be considered with other facts and circumstances in determining wantonness (*Perry v. Schmitt,* 184 Kan. 758, 339 P. 2d 36). The appellees argue that the simple affirmative "yes", in answer to the question as to whether Havlik was guilty of gross and wanton negligence, is something more than a mere conclusion—that it may be extended by appending the trial court's definition of a wanton act as given in the instructions. It is argued the jury, then, having answered the question which implicitly contained the definition of gross and wanton negligence in the affirmative, quite properly found that one

element of Havlik's wanton conduct was excessive speed under the existing conditions and was contrary to law. It then proceeded to expand its answer to the second question by adding, "2. Not Driving with Due regard."

It is argued by the appellees that the second part of the answer should be considered in the light of instructions 16, 17, 18, 19 and 20. No. 17 instructed that it was Havlik's duty at night to keep his vehicle under such control and to regulate his speed as to his ability to stop or turn aside within the range of his headlights, and that plaintiffs could not recover unless Havlik is found guilty of gross and wanton negligence. No. 18 advised that it was the duty of a driver on a public street to drive within the range of his vision so that he may stop or turn aside and that plaintiffs could not recover unless Havlik is found guilty of gross and wanton negligence. No. 19 stated that anyone driving in an area where he observed, or could have observed, that his vision was impaired is required to use the degree of caution used by an ordinary prudent person to assure the safety of others in the area, and that plaintiffs could not recover unless Havlik was guilty of gross and wanton negligence. Finally, No. 20 stated that it was the duty of a driver to keep a lookout for objects in his line of vision which may affect his use of the highway; that the law presumes that a driver will see that which a person would and could see in the exercise of ordinary care, and that plaintiffs could not recover unless Havlik was guilty of gross and wanton negligence. Instruction No. 16 advised that it was the duty of a driver to keep a *vigilant* lookout to see whether there might be an object in the range of his vision with which he might collide, and the driver must be on the alert and to use the care and caution that would be used by a reasonable, prudent person in the same or similar circumstances; the driver must keep his vehicle under such control that he would be able to stop or turn aside to avoid colliding with such object. Failure to comply with the rule would constitute negligence, except plaintiffs cannot recover against the defendant unless Michael Havlik is found guilty of gross and wanton negligence.

It is then argued by the appellees that instructions 16 through 20, inclusive, while repetitious in some respects, may be categorized as generally pertaining to "due regard" or the duty to exercise care in the circumstances described in the instructions.

By this expanded answer attributable to the jury's finding that Havlik was driving without due regard added to its express finding

that Havlik had exceeded the speed limit, the appellees contend a liberal construction of the specific findings support its general finding that Havlik was guilty of gross and wanton negligence. (See, *Bott v. Wendler*, 203 Kan. 212, 453 P. 2d 100, cited by the appellees.)

The appellant argues that assuming under the evidence the jury could have greatly expanded its finding of specific acts of negligence, although it did not choose to do so, by special finding No. 2 the jury did exonerate the host driver, Havlik, from all other acts such as may be conceived, imagined or argued by the appellees. A jury's verdict finding specific acts of negligence exonerates and absolves a defendant from all other acts of negligence charged against him (*Jones v. A., T. & S. F. Rly. Co.*, 148 Kan. 686, 85 P. 2d 15; *Bilsky v. Central Surety & Ins. Corp.*, 150 Kan. 858, 96 P. 2d 691, and *Abston v. Medora Grain, Inc.*, 206 Kan. 727, 482 P. 2d 692).

The main object of special questions to the jury is to ferret out the various facts separately in order to enable the court to apply the law and to guard against any misapplication of the law by the jury (*Lutz v. Peine*, 209 Kan. 559, 498 P. 2d 60).

The appellant Estate of Havlik concludes its argument on this point by saying:

". . . We submit that both the above 'jury determined acts' of exceeding the 30 mile per hour speed limit and driving without due regard cannot possibly constitute any more than simple and ordinary negligence. This Appellant does not contend that the Record here is insufficient to charge Michael Havlik with 'ordinary negligence,' but it falls far short, as a matter of law, of being sufficient to find him guilty of 'gross and wanton negligence.' But even so, that is still not the full test as to this point of Appellant's argument. The point we are now making is that, regardless of all evidence, the jury, after days of deliberation, exonerated and absolved Michael Havlik from any acts which could constitute gross and wanton negligence. It absolved and exonerated him from all acts other than those two which were specifically found. . . ."

Without unduly extending the discussion herein to review cases concerning general and special findings, we have come to the conclusion that under all of the facts and circumstances presented by the record in this case the jury was confused. In fairness to all parties under these circumstances a new trial is ordered on all issues in the case respecting all parties.

In view of the foregoing other points asserted by the parties merit only brief consideration.

The appellant City of Pratt's contention that the Hays plaintiffs failed to comply with the requirements of K. S. A. 1973 Supp. 12-105 regarding notice is without merit. A review of the record indicates that the City of Pratt was given notice within three months after the injury and prior to the bringing of this lawsuit. (*Ray v. City of Wichita,* 138 Kan. 686, 27 P. 2d 288; *Hibbs v. City of Wichita,* 176 Kan. 529, 271 P. 2d 791; and *James v. City of Wichita,* 202 Kan. 222, 447 P. 2d 817.) It is to be noted *Ray v. City of Wichita,* supra, is patently in error. The proper rule applicable is stated in the majority decision, but it is not applied to the facts as recited in the case. The dissenting opinion of Chief Justice Johnson with respect to the facts is correct.

The appellant Estate of Havlik's challenge to the admission of the testimony of police officers' McGuire and Blasi, as to their opinion of the speed of the Havlik vehicle, is without merit. It is contended that because McGuire agreed with counsel at the deposition proceeding that figuring the vehicle speed was "pretty much of a guess" his trial testimony was necessarily based on conjecture and speculation, and that Blasi's statement that his opinion was partly guess and speculation renders it inadmissible for the same reason.

K. S. A. 60-456 pertains to expert testimony and provides in part:

"(*b*) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(*c*) Unless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission."

It is clear that pursuant to the above statute the trial court found the officers' testimonies were based on facts or data perceived by them and was within their special knowledge, skill, experience or training. We have frequently stated that the qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Taylor v. Maxwell,* 197 Kan. 509, 419 P. 2d 822; *Hildebrand v. Mueller,* 202 Kan. 506, 449 P. 2d 587; and *Staudinger v. Sooner Pipe & Supply Corporation,* 208 Kan. 100, 490 P. 2d 619.)

It is true, as Havlik's estate contends, that questions propounded to experts should not require answers involving matters of conjecture or speculation (*Staudinger v. Sooner Pipe & Supply Corporation,* supra), however we do not believe the trial court abused

its discretion in permitting these officers to testify. Both of the officers were at the accident scene, they described the vehicular damage upon which their opinions were based, and they had both investigated a number of accidents involving vehicles traveling at known speeds. McGuire's statement at the deposition proceeding was answered by his explanation that during the intervening period he had reviewed many accidents he had investigated involving vehicles traveling at known speeds. Nor can it be said that Blasi's testimony was so infected with guess, speculation and conjecture as to render it inadmissible solely because, after persistent effort by counsel on cross-examination, he equivocally responded that his opinion was "partly" guess and speculation. These are matters properly for the trial court's determination. The attack upon this opinion testimony goes merely to the weight of the testimony, and bears only upon its probative value.

The attack of the appellant Havlik estate upon the sufficiency of the evidence to establish gross and wanton negligence on the part of Havlik, and the attack of the appellant City of Pratt upon instruction No. 26 which was given over the city's objection are rendered moot by the decision of this court in *Henry v. Bauder,* case No. 47,101, this date decided, holding the guest statute unconstitutional.

Upon retrial of the case, assuming the issues are properly framed, it will be necessary only to establish simple negligence on the part of Michael Havlik, rather than gross and wanton negligence as heretofore required under the guest statute. (See, PIK [Civil] 5.02; and *Knox v. Barnard,* 181 Kan. 943, 317 P. 2d 452.)

The appellant city attacks the findings of the jury and the rulings of the court on the ground that they were not supported by any evidence that the city negligently created and continued maintenance of a street in an unsafe and hazardous condition. Our review of the record indicates that this point is without merit. (*Grantham v. City of Topeka,* 196 Kan. 393, 411 P. 2d 634.)

Accordingly the judgment of the lower court is reversed with directions to grant a new trial as to all parties on all issues.